UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GEOFFREY VARGA and WILLIAM
CLEGHORN, solely in their capacity as Joint
Voluntary Liquidators of Bear Stearns High-Grade
Structured Credit Strategies (Overseas) Ltd. and
Bear Stearns High-Grade Structured Credit
Strategies Enhanced Leverage (Overseas) Ltd.,
and not individually,

                                        Plaintiffs,

                -against-

BEAR STEARNS ASSET MANAGEMENT
INC., THE BEAR STEARNS COMPANIES,
INC., BEAR, STEARNS & CO. INC., RALPH
CIOFFI, MATTHEW TANNIN, RAY
MCGARRIGAL, and DELOITTE & TOUCHE
LLP,

                                        Defendants.

---

08-CV-03397 (BSJ)

ECF CASE

---

## MEMORANDUM IN SUPPORT OF MOTION BY DELOITTE & TOUCHE LLP TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 9(b)

Max R. Shulman
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
mshulman@cravath.com

Attorneys for Defendant
Deloitte & Touche LLP

May 7, 2008

## TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ iii

Preliminary Statement ....................................................................................................... 1

Background ........................................................................................................................ 1

    A.    The Funds. ............................................................................................................ 1

    B.    The Parties. ........................................................................................................... 2

    C.    The Allegations Against Deloitte. ........................................................................ 3

Standards for Dismissal ..................................................................................................... 5

Argument ........................................................................................................................... 6

I.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT
      LACKS SUBJECT MATTER JURISDICTION OVER AN ACTION BETWEEN
      ALIENS. ...................................................................................................................... 6

    A.    Deloitte and Plaintiffs are Aliens for Diversity Purposes. ................................... 7

    B.    The Presence of Aliens on Both Sides of This Action Destroys Diversity. ........... 8

    C.    The Resident Status of Deloitte's Alien Partners Does Not Change That
        Result. ................................................................................................................... 9

II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO SATISFY
      THE PARTICULARITY REQUIREMENTS OF FED. R. CIV. P. 9(b). ......................... 14

    A.    Rule 9(b) Requires Plaintiffs to Plead Claims Sounding In Fraud with
        Particularity. ........................................................................................................ 14

    B.    Because The Claims Against Deloitte Sound In Fraud or Are "Inextricably
        Intertwined" With Underlying Fraud Allegations, Plaintiffs Must Satisfy
        Rule 9(b) As to Every Such Claim. ..................................................................... 16

    C.    Plaintiffs Fail to Plead The Claims Against Deloitte with Particularity. .............. 18

        1.    Plaintiffs' Principal Allegation Is Unsupported and Illogical .................... 18

        2.    Plaintiffs' Other Allegations Are Wholly Conclusory ............................... 20

        3.    The Only Specific Allegations In the Complaint Actually Disprove
            Plaintiffs' Claims. ..................................................................................... 21

i

**TABLE OF CONTENTS**
(continued)

**Page**

D.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of
Fraudulent Intent. ...................................................................................... 22

1.    Plaintiffs Fail to Plead Motive and Opportunity. ....................................... 22

2.    Plaintiffs Fail to Plead Strong Circumstantial Evidence of
Conscious Misbehavior or Recklessness. ................................................... 23

Conclusion ................................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

A.I.A. Holdings, S.A. v. Lehman Bros. Inc.,
   No. 97 Civ. 4978, 1998 WL 159059 (S.D.N.Y. Apr. 1, 1998)................................17

A.T.X. Export, Ltd. v. Mendler,
   849 F. Supp. 283 (S.D.N.Y. 1994) ...............................................................10, 13

Arnold Chevrolet LLC v. Tribune Co.,
   No. 04-CV-3097, 2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) ...........................20

ATSI Commc'ns, Inc. v. Shaar Fund, Inc.,
   493 F.3d 87 (2d Cir. 2007)...................................................................6, 15, 20

Azimut-Benetti S.p.A. v. Magnum Marine Corp.,
   No. 05 Civ. 3260, 2005 WL 1950345 (S.D.N.Y. Aug. 10, 2005) ...........................9

Baena v. Woori Bank,
   No. 05 Civ. 7018, 2008 WL 110908 (S.D.N.Y. Jan. 2, 2008)................................15

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,
   No. 93 Civ. 6876, 1998 WL 91217 (S.D.N.Y. Mar. 3, 1998) .................................9

Bank of India v. Subramanian,
   No. 06 Civ. 2026, 2007 WL 1424668 (S.D.N.Y. May 15, 2007)...........................10

Bell Atl. Corp. v. Twombly,
   127 S. Ct. 1955 (2007).............................................................................20

Buti v. Impressa Perosa, S.R.L.,
   935 F. Supp. 458 (S.D.N.Y. 1996) .................................................................10

Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG,
   335 F.3d 52 (2d Cir. 2003)..........................................................................13

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002)...........................................................................6

Chill v. Gen. Elec. Co.,
   101 F.3d 263 (2d Cir. 1996)....................................................................16, 22

China Nuclear Energy Indus. Corp. v. Anderson, LLP,
   11 F. Supp. 2d 1256 (D. Col. 1998)...............................................................10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Corporacion Venezolana de Fomento v. Vintero Sales Corp.,
629 F.2d 786 (2d Cir. 1980)....................................................................................8

Daly v. Castro Llanes,
30 F. Supp. 2d 407 (S.D.N.Y. 1998)......................................................................17

Darel v. Darel,
No. CV-06-2397-PHX-P6R, 2006 WL 3330600 (D. Ariz. Nov. 15, 2006) ...........10

Diaz v. NBC Universal, Inc.,
536 F. Supp. 2d 337 (S.D.N.Y. 2008).....................................................................6

Dietrich v. Bauer,
76 F. Supp. 2d 312 (S.D.N.Y. 1999)......................................................................21

Empire HealthChoice Assurance, Inc. v. McVeigh,
396 F.3d 136 (2d Cir. 2005)..................................................................................14

Eridan Shipping Ltd. v. Filatov,
No. 07 Civ. 6347, 2008 WL 613151 (S.D.N.Y. Mar. 5, 2008) ...............................9

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York,
375 F.3d 168 (2d Cir. 2004)........................................................................15, 16, 22

Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London,
940 F. Supp. 528 (S.D.N.Y. 1996) ..........................................................................8

Four Finger Art Factory v. Dinicola,
No. 99 Civ. 1259, 2001 WL 21248 (S.D.N.Y. Jan. 9, 2001)...........................23, 24

Franceskin v. Credit Suisse,
214 F.3d 253 (2d Cir. 2000)...................................................................................11

Goonewardena v. New York,
475 F. Supp. 2d 310 (S.D.N.Y. 2007).....................................................................6

Griffin v. McNiff,
744 F. Supp. 1237 (S.D.N.Y. 1990), aff'd, 996 F.2d 303 (2d Cir. 1993).........15, 24

Grupo Dataflux v. Atlas Global Group, L.P.,
541 U.S. 567 (2004).................................................................................................7

Hodgson v. Bowerbank,
5 Cranch 303, 9 U.S. 303 (1809) ..........................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Hong Kong Deposit and Guar. Co. v. Hibdon,
  602 F. Supp. 1378 (S.D.N.Y. 1985)............................................................7

IGY Ocean Bay Props., Ltd. v. Ocean Bay Props. I Ltd.,
  534 F. Supp. 2d 446 (S.D.N.Y. 2008)........................................................9

In re Axis Cap. Holdings Ltd. Secs. Litig.,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006)..............................................15, 16

In re JP Morgan Chase Secs. Litig.,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005)......................................................22

In re Ultrafem Inc. Secs. Litig.,
  91 F. Supp. 2d 678 (S.D.N.Y. 2000).......................................................17

Inarco Int'l Bank N.V. v. Lazard Freres & Co.,
  No. 97 Civ. 0378, 1998 WL 427618 (S.D.N.Y. July 29, 1998) ................7

Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.,
  875 F.2d 388 (2d Cir. 1989).....................................................................11

Intec USA, LLC v. Engle,
  467 F.3d 1038 (7th Cir. 2006) ..........................................................12, 13

Kalnit v. Eichler,
  264 F.3d 131 (2d Cir. 2001).....................................................................23

Khan v. State Bank of India,
  No. 01 Civ. 1305, 2001 WL 1463783 (S.D.N.Y. Nov. 15, 2001) .............9

Lee v. Trans Am. Trucking Serv., Inc.,
  111 F. Supp. 2d 135 (E.D.N.Y. 1999) .......................................................9

Lerner v. Fleet Bank, N.A.,
  459 F.3d 273 (2d Cir. 2006)..............................................................16, 22

Lindsay v. Toyota Motor Sales, U.S.A., Inc.,
  No. 04 Civ. 10137, 05 Civ. 943, 2005 WL 2030311
  (S.D.N.Y. Aug. 22, 2005).........................................................................9

Lloyds Bank PLC v. Norkin,
  817 F. Supp. 414 (S.D.N.Y. 1993) ...........................................................8

Luckett v. Bure,
  290 F.3d 493 (2d Cir. 2002).......................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Marcus v. "Five J" Jewelers Precious Metals Indus. Ltd.,
  111 F. Supp. 2d 445 (S.D.N.Y. 2000)...........................................................................9

Matsuda v. Wada,
  128 F. Supp. 2d 659 (D. Haw. 2000) .......................................................................10

Matsumura v. Benihana Nat'l Corp.,
  No. 06 Civ. 7609, 2008 WL 282021 (S.D.N.Y. Jan. 25, 2008).........................................16, 18

Mudge Rose Guthrie Alexander & Ferdon v. Pickett,
  11 F. Supp. 2d 449 (S.D.N.Y. 1998)..........................................................................7

Northcross v. Bd. of Ed. of Memphis City Sch.,
  412 U.S. 427 (1973)...........................................................................................11

O'Brien v. Nat'l Prop. Analysts Partners,
  936 F.2d 674 (2d Cir. 1991)...................................................................................24

Owen Equip. & Erection Co. v. Kroger,
  437 U.S. 365 (1978)............................................................................................8

Phipps v. Comprehensive Cmty. Dev. Corp.,
  152 F. Supp. 2d 443 (S.D.N.Y. 2001).......................................................................24

Reliance Ins. Co. v. First Class Coverage, Inc.,
  No. 05 Civ. 2269, 2005 U.S. Dist. LEXIS 20406
  (S.D.N.Y. Sept. 14, 2005).....................................................................................7

Rombach v. Chang,
  355 F.3d 164 (2d Cir. 2004)..............................................................................15, 16

Rosner v. Bank of China,
  528 F. Supp. 2d 419 (S.D.N.Y. 2007).......................................................................17

Saadeh v. Farouki,
  107 F.3d 52 (D.C. Cir. 1997).........................................................................12, 13, 14

Schiavone Constr. Co. v. City of New York,
  99 F.3d 546 (2d Cir. 1996)....................................................................................7

Shields v. Citytrust Bankcorp, Inc.,
  25 F.3d 1124 (2d Cir. 1994)..................................................................................21

Singh v. Daimler-Benz AG,
  9 F.3d 303 (3d Cir. 1993)................................................................................12, 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Sompo Japan Ins. Co. v. Union Pac. R.R. Co.,
    456 F.3d 54 (2d Cir. 2006)..................................................................11

St. Paul Fire and Marine Ins. Co. v. Univ. Builders Supply,
    409 F.3d 73 (2d Cir. 2005)...................................................................8

Sterling Interiors Group, Inc. v. Haworth, Inc.,
    No. 94 Civ. 9216, 1996 WL 426379 (S.D.N.Y. July 30, 1996) ..............23

Thompson v. Deloitte & Touche LLP,
    503 F. Supp. 2d. 1118 (S.D. Iowa 2007) .............................................10

U.S. v. Ness,
    466 F.3d 79 (2d Cir. 2006)..................................................................11

Universal Licensing Corp. v. Paola del Lungo S.p.A.,
    293 F.3d 579 (2d Cir. 2002).........................................................7, 8, 11

Ward v. Bank of New York,
    455 F. Supp. 2d 262 (S.D.N.Y. 2006)....................................................6

Wexner v. First Manhattan Corp.,
    902 F.2d 169 (2d Cir. 1990)...............................................................24

Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,
    215 F.3d 247 (2d Cir. 2000).................................................................6

Zucker v. Sasaki,
    963 F. Supp. 301 (S.D.N.Y. 1997) ......................................................23


**STATUTES & RULES**

28 U.S.C. § 1332.............................................................................. passim

28 U.S.C. § 1332(a) .......................................................................... passim

28 U.S.C. § 1332(a)(2)...............................................................6, 7, 12, 13

28 U.S.C. § 1332(c) ................................................................................10

28 U.S.C. § 1332(c)(1)........................................................................10, 11

Fed. R. Civ. P. 8(a) ...............................................................................20

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Fed. R. Civ. P. 9(b) .................................................................................................. passim

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 1, 5

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 6


**OTHER AUTHORITIES**

Codification of Statements on Auditing Standards, AU § 508 ("Reports on Audited
    Financial Statements") (Am. Inst. of Certified Pub. Accountants) (2007) ...................... 4, 5, 19

Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, 102 Stat. 4642,
    4646 (1988) ........................................................................................................................ 9

U.S. Constitution art. III ............................................................................................... 12, 14

Deloitte & Touche LLP ("Deloitte") submits this memorandum in support of its motion, pursuant to Federal Rules of Civil Procedure 12(b)(1) or, in the alternative, 9(b) and 12(b)(6), to dismiss the Complaint of plaintiffs Geoffrey Varga and William Cleghorn ("Plaintiffs").

## Preliminary Statement

The Complaint should be dismissed for two separate and independent reasons.

<u>First</u>, the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because aliens are on both sides and, as a result, there is not complete diversity of citizenship. Each Plaintiff is an alien; and Deloitte, as a limited liability partnership with resident alien partners, is also deemed an alien for purposes of diversity jurisdiction.

<u>Second</u>, even if there were subject matter jurisdiction (and there is not), the Complaint is woefully inadequate under Fed. R. Civ. P. 9(b). Although its claims against Deloitte sound in fraud, it contains only the most conclusory (and illogical) averments of misconduct. There are not--and indeed could not be--any meat on these bones. There are no "who, what, when, where or why" allegations and not even the slightest effort to plead facts supporting a strong inference of scienter. Indeed, the only particularized averments are flatly inconsistent with a claim of fraud; they concede that Deloitte explicitly warned investors about the very valuation risk upon which the Complaint is based.

For all these reasons, the Complaint should be dismissed with prejudice as against Deloitte.

## Background

### A.    The Funds.

Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. (the "High-Grade Overseas Fund") and Bear Stearns High-Grade Structured Credit Strategies Enhanced

Leverage (Overseas) Ltd. (the "High-Grade Enhanced Overseas Fund"), Cayman Islands

exempted companies organized under the Companies Law of the Cayman Islands, are two

"feeder funds" for two master hedge funds (together the "Overseas Funds" and, with their

respective master and domestic feeder funds, the "Funds") managed by Bear Stearns & Co. Inc.

("Bear Stearns") and certain of its affiliates, subsidiaries and employees. (Compl. ¶¶ 1, 22, 24,

39.)[1]  The Funds invested principally in securities called collateralized debt obligations

("CDOs") that were based upon pools of residential mortgages. (Compl. ¶ 3.)  The value of the

Funds collapsed in June 2007. (Compl. ¶¶ 2, 18.)

      **B.**    **The Parties.**

          Plaintiffs are the liquidators of the Funds.  Plaintiff Varga is a citizen of Canada

and a resident of the Cayman Islands, and plaintiff Cleghorn is a citizen and resident of the

United Kingdom. (Compl. ¶ 22.)  They seek recovery of the Overseas Funds' losses. (Compl.

¶ 1.)  Defendants are Bear Stearns and certain of its affiliates, subsidiaries and employees, and

Deloitte. Id.

          Defendant Bear Stearns Asset Management Inc. ("BSAM") is a corporation

organized under the laws of the State of New York with its principal place of business in New

York City.  BSAM was the investment manager for the Funds. (Compl. ¶ 26.)  Defendant The

Bear Stearns Companies, Inc., is a corporation organized under the laws of the State of Delaware

with its principal place of business in New York City.  It is the corporate parent of BSAM and

Bear Stearns. (Compl. ¶ 27.)  Defendant Bear Stearns is a corporation organized under the laws

of the State of Delaware with its principal place of business in New York City.  It acted as

placement agent for the Funds. (Compl. ¶ 28.)  Defendant Ralph Cioffi is a citizen and resident

---

[1] For purposes of this motion only, the allegations in the Complaint are taken as true (except where otherwise indicated).

2

of the State of New Jersey.  He was a Senior Managing Director of both BSAM and Bear Stearns and a member of the Board of Directors of Bear Stearns.  He was the Senior Portfolio Manager of the Funds and shared responsibility for managing their investment portfolios.  (Compl. ¶ 29.) Defendant Matthew Tannin is a citizen and resident of the State of New York.  He was a Senior Managing Director of BSAM and Chief Operating Officer of the High-Grade Enhanced Overseas Fund and, through BSAM, a Portfolio Manager of the High-Grade Overseas Fund.  He too shared responsibility for managing the Funds' investment portfolios.  (Compl. ¶ 30.) Defendant Ray McGarrigal is a citizen and resident of the State of New York.  He was a Managing Director or Senior Managing Director of BSAM and a Portfolio Manager of the Overseas Funds.  He also shared responsibility for managing the investment portfolios of the Funds.  (Compl. ¶ 31.)

Defendant Deloitte is a limited liability partnership organized under the laws of the State of Delaware with offices in (among other places) New York City.  Deloitte was engaged as outside auditor of the Funds and issued various audit reports to and in respect of the Funds.  (Compl. ¶ 33.)  Notwithstanding Plaintiffs' assertion to the contrary, as of the date the Complaint was filed, at least eighteen Deloitte partners were citizens of foreign countries residing in the United States.  (See Affidavit of Gary Bottfeld, dated May 5, 2008 ("Bottfeld Aff.") ¶ 2.)

### C.    The Allegations Against Deloitte.

The Complaint alleges that Deloitte "assured investors that it was conducting independent, thorough, and objective audits" of the Overseas Funds' financial statements (Compl. ¶¶ 3, 72), "endors[ed] the Overseas Funds' financial reporting" (Compl. ¶ 6), "certified" the Funds' valuation models (Compl. ¶ 58) and delivered "clean" audit opinions (Compl. ¶ 96).

3

The Complaint acknowledges, however, that Deloitte's 2006 audit report for the High-Grade

Overseas Fund contained the following express warning:

> "As described in Note 2 [to the audited financial statements] securities with a total
> market value of $616,023,080, 70.19% of the Master Fund's net assets, represents
> securities which were fair valued by the Master Fund's management. The Master
> Fund's management has estimated the fair value of these securities in the absence
> of readily ascertainable market values. <u>These values may differ from the values
> that would have been used ha[d] a ready market for these investments existed, and
> the differences could be material.</u>"

(Compl. ¶ 95; emphasis added.)[2]

   The Complaint's main foundation stone for the conclusory charge of Deloitte

misconduct is the unsupported--and wholly illogical--averment that because no audit testing is

identified in Deloitte's audit reports, none therefore "appears" to have been done. Thus, the

Complaint alleges:

> "As the audit report does not identify any testing, <u>it appears that</u> the auditors
> merely relied upon management's representations (which is insufficient under
> GAAS [i.e., Generally Accepted Auditing Standards], or <u>undertook insufficient
> steps to test</u> the [valuation methods used by the managers of the Funds] . . . ."

(Compl. ¶ 99; emphasis added.)  That is an obvious non sequitur.  A GAAS-compliant audit

report virtually never identifies specific testing procedures.  See <u>Codification of Statements on

Auditing Standards</u>, AU § 508 ("Reports on Audited Financial Statements") (Am. Inst. of

---

[2] The Complaint further acknowledges that the 2006 audit report for the High-Grade Enhanced
Overseas Fund contained a similar warning:

> "As described in Note 2 [to the audited financial statements], 63.10% of the
> Master Fund's net assets, represents securities which were fair valued by the
> Master Fund's management.  The Master Fund's management has estimated the
> fair values of these securities in the absence of readily ascertainable market
> values. <u>These values may differ from the values that would have been used had a
> ready market for these investments existed, and the differences could be
> material.</u>"

(Compl. ¶ 95; emphasis added.)

Certified Pub. Accountants) (2007) (hereinafter, "AU § 508") (Affidavit of Max R. Shulman, dated May 6, 2008, ("Shulman Aff.") Ex. 1).[3]  Thus, even a cursory investigation by Plaintiffs or their counsel would have revealed that the (facially speculative) conclusion simply does not follow from the premise.

The only other allegations of Deloitte misconduct are equally conclusory and equally illogical.  For example, the Complaint baldly asserts--without any supporting detail--that Deloitte "learned [that the Overseas Funds were 'doomed to failure'], or was obligated to discover [that fact] and willfully and recklessly failed to do so" (Compl. ¶¶ 5, 74), "knowingly or recklessly facilitated this scheme" (Compl. ¶¶ 6, 75), "perpetuated the Bear Stearns Defendants' fraud" (Compl. ¶ 58) and "possibly succumbed to pressure from the Bear Stearns Defendants" and "thereby furthered the Bear Stearns Defendants' fraudulent scheme" (Compl. ¶ 100).  There are no particulars--i.e., no specification of the allegedly fraudulent statements, who made them, when and where they were made or why they were fraudulent, and no averments that would give rise to a strong inference of fraudulent intent.

Based upon those unsupported (and largely conjectural) allegations, Plaintiffs charge Deloitte with negligence and accounting malpractice (Count Six), conspiracy to commit (or aiding and abetting) fraud and breach of fiduciary duty (Count Seven) and unjust enrichment (Count Eight).  (Compl. ¶¶ 170-74, 178, 183.)

## Standards for Dismissal

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of showing that jurisdiction exists.  See Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002).  In determining whether there is

---

[3] AU § 508 "applies to auditors' reports" that are intended to present financial statements "in conformity with generally accepted accounting principles".  AU § 508.01.  The section defines, inter alia, the "basic elements of" such a report.  See AU § 508.08.

jurisdiction, the Court must accept as true all factual allegations in the complaint but "need not accept as true contested jurisdictional allegations" or draw inferences favorable to the party asserting jurisdiction. See Goonewardena v. New York, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007) (citing Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000)); see Ward v. Bank of New York, 455 F. Supp. 2d 262, 265 (S.D.N.Y. 2006) (same).

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court similarly must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Inc., 493 F.3d 87, 98 (2d Cir. 2007); Diaz v. NBC Universal, Inc., 536 F. Supp. 2d 337, 341 (S.D.N.Y. 2008). However, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level". ATSI Commc'ns, Inc., 493 F.3d at 98 (quotation marks omitted). The Court may consider documents referenced by, incorporated in or relied upon in drafting the complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 & n.3 (2d Cir. 2002); ATSI Commc'ns, Inc., 493 F.3d at 98.

### Argument

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER AN ACTION BETWEEN ALIENS.

Plaintiffs' sole proffered basis for subject matter jurisdiction is diversity of citizenship under 28 U.S.C. § 1332(a)(2), which provides for jurisdiction in actions between "citizens of a State and citizens or subjects of a foreign state". Specifically, Plaintiffs allege that each named plaintiff is a "citizen of a country other than the United States" and each named defendant is "a citizen of a state of the United States and not of a foreign country". (Compl.

6

¶ 20.)[4]  Plaintiffs, however, are wrong in their factual assertion about Deloitte.  As a limited

liability partnership, Deloitte is considered a citizen of all states or foreign countries of which its

partners are citizens.  As the Bottfeld Affidavit shows, eighteen of those partners are aliens.

Since Plaintiffs are also aliens and section 1332(a)(2) does not permit jurisdiction in actions

where aliens are suing aliens, diversity of citizenship is destroyed.

### A.    Deloitte and Plaintiffs are Aliens for Diversity Purposes.

The diversity analysis looks at a party's citizenship at the time the complaint is

filed.  See Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir.

2002).  Plaintiffs, who were citizens of the United Kingdom and Canada when they filed suit, are

aliens.[5]  (Compl. ¶ 22.)  As mentioned above, because Deloitte is a limited liability partnership

(Compl. ¶ 33), its citizenship for purposes of diversity depends upon the citizenship of each of its

partners, including those partners who are citizens of foreign countries.  See Grupo Dataflux v.

Atlas Global Group, L.P., 541 U.S. 567, 569 (2004) (the "accepted rule" is that a limited

partnership is "a citizen of each state or foreign country of which any of its partners is a

citizen"); Schiavone Constr. Co. v. City of New York, 99 F.3d 546, 548 (2d Cir. 1996) (applying

the rule to determine a joint venture's citizenship); Mudge Rose Guthrie Alexander & Ferdon v.

Pickett, 11 F. Supp. 2d 449, 451 (S.D.N.Y. 1998) (applying the rule to limited liability

partnerships); Inarco Int'l Bank N.V. v. Lazard Freres & Co., No. 97 Civ. 0378, 1998 WL

427618, at *2 n.3 (S.D.N.Y. July 29, 1998) (where a partnership's members "include[] both

---

[4] Although the Complaint refers only generally to section 1332, without identifying the particular subsection upon which it is basing jurisdiction, the only one that could possibly apply under the facts alleged is section 1332(a)(2).

[5] Where, as here, a liquidator sues on behalf of a company, "the citizenship of the liquidator rather than that of the company represented, is determinative for diversity purposes".  Reliance Ins. Co. v. First Class Coverage, Inc., No. 05 Civ. 2269, 2005 U.S. Dist. LEXIS 20406, at *6 (S.D.N.Y. Sept. 14, 2005); see also Hong Kong Deposit and Guar. Co. v. Hibdon, 602 F. Supp. 1378, 1380-81 (S.D.N.Y. 1985).

foreign and United States citizens . . . the Court must consider all members of a partnership, including foreign members, for diversity purposes").

Plaintiffs incorrectly allege that "[n]o member of Deloitte is a citizen or resident of a country other than the United States". (Compl. ¶ 33.) That is not so--and it was not so at the time the complaint was filed. As of that date, Deloitte had at least eighteen partners who were citizens of a foreign country but residing and working in the United States. (Bottfeld Aff. ¶ 2.) Accordingly, Deloitte is, for diversity purposes, considered an alien because it has partners who are aliens.

### B.    The Presence of Aliens on Both Sides of This Action Destroys Diversity.

Section 1332(a) requires complete diversity between all plaintiffs and all defendants. See St. Paul Fire and Marine Ins. Co. v. Univ. Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005) ("It is well established that for a case to fit within [section 1332], there must be complete diversity" (internal quotation omitted)); Lloyds Bank PLC v. Norkin, 817 F. Supp. 414, 417 (S.D.N.Y. 1993) (the "complete diversity rule" requires that "each defendant is a citizen of a different State from each plaintiff" (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original))). That requirement bars aliens from appearing on both sides of a suit. See Universal Licensing Corp., 293 F.3d at 581 ("diversity is lacking . . . where on one side there are citizens and aliens and on the opposite side there are only aliens"); Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786, 790 (2d Cir. 1980) ("the presence of aliens on two sides of a case destroys diversity jurisdiction"); Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London, 940 F. Supp. 528, 533 n.6 (S.D.N.Y. 1996) (Jones, J.) ("it is well-established that the federal courts will not entertain actions between aliens"). Because Plaintiffs and Deloitte are aliens, complete diversity is lacking and there is no subject matter jurisdiction.

**C.    The Resident Status of Deloitte's Alien Partners Does Not Change That Result.**

Diversity jurisdiction is not salvaged by the fact that the eighteen Deloitte partners

with citizenship in a foreign country are "resident aliens" and not aliens living abroad.  In 1988,

Congress amended the federal diversity statute to provide that "an alien admitted to the United

States for permanent residence shall be deemed a citizen of the State in which such alien is

domiciled".  28 U.S.C. § 1332(a); see Judicial Improvements and Access to Justice Act, Pub. L.

No. 100-702, 102 Stat. 4642, 4646 (1988).  Since that time, however, a long line of district court

cases in the Second Circuit has consistently held that the amendment does not apply to suits

between non-resident aliens and resident aliens; it applies only to suits between resident aliens

and U.S. citizens.  See, e.g., Eridan Shipping Ltd. v. Filatov, No. 07 Civ. 6347, 2008 WL

613151, at *1 (S.D.N.Y. Mar. 5, 2008) ("the cases in this Circuit have consistently held that such

a suit between a permanent resident alien and non-resident alien is barred").[6]

---

[6] See also IGY Ocean Bay Props., Ltd. v. Ocean Bay Props. I Ltd., 534 F. Supp. 2d 446, 448-50 (S.D.N.Y. 2008) (no jurisdiction under section 1332 over a claim by an alien against a corporation with dual citizenship; "[a]llowing parties with dual citizenship to unilaterally choose which citizenship to rely upon . . . would greatly increase uncertainty regarding subject matter jurisdiction [and] would expand rather than narrow the diversity jurisdiction of the federal courts . . ."); Lindsay v. Toyota Motor Sales, U.S.A., Inc., No. 04 Civ. 10137, 05 Civ. 943, 2005 WL 2030311, at *2 (S.D.N.Y. Aug. 22, 2005) (no jurisdiction under section 1332 where a foreign plaintiff was domiciled in New York since "on one side of this action there is only an alien, and on the other side there are both citizens and aliens"); Azimut-Benetti S.p.A. v. Magnum Marine Corp., No. 05 Civ. 3260, 2005 WL 1950345, at *1 (S.D.N.Y. Aug. 10, 2005) (court lacks diversity jurisdiction because "this litigation is between two aliens, notwithstanding that [the defendant] is a permanent resident alien domiciled in Florida"); Khan v. State Bank of India, No. 01 Civ. 1305, 2001 WL 1463783, at *2 (S.D.N.Y. Nov. 15, 2001) (no diversity where an alien plaintiff allegedly residing in New York sued an alien defendant); Marcus v. "Five J" Jewelers Precious Metals Indus. Ltd., 111 F. Supp. 2d 445, 447-48 (S.D.N.Y. 2000) (no jurisdiction under section 1332 over suits between an alien and a permanent resident alien); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., No. 93 Civ. 6876, 1998 WL 91217, at *1 (S.D.N.Y. Mar. 3, 1998) (no diversity jurisdiction over third party claims where the plaintiff was an alien and the defendant was a partnership that had alien partners); Lee v. Trans Am. Trucking Serv., Inc., 111 F. Supp. 2d 135, 141 (E.D.N.Y. 1999) (section 1332 does "not confer diversity

9

These cases recognize that the 1988 amendment could not abrogate the U.S. Constitution's prohibition on suits in federal court between aliens or change the historical rule requiring complete diversity under section 1332--and district courts outside the Second Circuit have adopted a similar view, including in a case just last year involving Deloitte itself. See Thompson v. Deloitte & Touche LLP, 503 F. Supp. 2d 1118, 1125-28 (S.D. Iowa 2007) (collecting decisions and finding diversity lacking in a suit brought by Bahamanian and Bermudian plaintiffs against Deloitte based, in part, upon the fact that the Deloitte partnership includes resident alien partners).[7]

Although the Second Circuit has not yet decided the issue, it has suggested that it would come out the same way as the overwhelming district court majority above. A statute analogous to section 1332(a) is 28 U.S.C. § 1332(c), which provides, in relevant part, that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business". 28 U.S.C. § 1332(c)(1). The Second Circuit has consistently held that, despite the plain language of section 1332(c)(1), when a foreign corporation has its principal place of business in a state, diversity is lacking in a lawsuit

---

jurisdiction over a lawsuit between an alien on one side and an alien and a citizen on the other side, regardless of the residence status of the aliens"); Buti v. Impressa Perosa, S.R.L., 935 F. Supp. 458, 461-63 (S.D.N.Y. 1996) (same); A.T.X. Export, Ltd. v. Mendler, 849 F. Supp. 283, 284 (S.D.N.Y. 1994) (same); Lloyds Bank PLC, 817 F. Supp. at 416 ("Congress did not intend the [1988 amendment] to confer subject matter jurisdiction over an action brought by an alien against a citizen of a state and a permanent resident alien domiciled in a state"). But see Bank of India v. Subramanian, No. 06 Civ. 2026, 2007 WL 1424668, at *3-5 (S.D.N.Y. May 15, 2007).

[7] See also Darel v. Darel, No. CV-06-2397-PHX-P6R, 2006 WL 3330600, at *1 (D. Ariz. Nov. 15, 2006) ("§ 1332 did not enlarge diversity jurisdiction so as to encompass actions between non-resident aliens and permanent resident aliens"); Matsuda v. Wada, 128 F. Supp. 2d 659, 667 (D. Haw. 2000) ("there is no diversity of citizenship between permanent resident aliens and non-resident aliens"); China Nuclear Energy Indus. Corp. v. Anderson, LLP, 11 F. Supp. 2d 1256, 1259-60 (D. Col. 1998) (section 1332 does not confer diversity jurisdiction in suits involving "an alien on one side, and an alien and a citizen on the other side, regardless of the residence status of the aliens") (internal quotations omitted).

where another alien is on the other side. See Universal Licensing Corp., 293 F.3d at 581 (collecting cases and concluding that for "purposes of §§ 1332(a)(2) and (3), [e]ven if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity i[s] nonetheless defeated if another alien party is present on the other side of the litigation" (quotation marks omitted, alterations in original)); Franceskin v. Credit Suisse, 214 F.3d 253, 258 (2d Cir. 2000) (where an alien corporation is "deemed" a citizen of a state pursuant to 28 U.S.C. § 1332(c)(1) based upon its principal place of business, diversity jurisdiction is "nonetheless defeated" if there is "another alien party . . . on the other side of the litigation" (citation omitted)); Int'l Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 391-92 (2d Cir. 1989) (same).

   The same result should obtain under the parallel "deemed" citizenship provision of the 1988 amendment to section 1332(a). As a well-recognized canon of statutory construction provides, courts should interpret like terms in analogous statutes alike. See Sompo Japan Ins. Co. v. Union Pac. R.R. Co., 456 F.3d 54, 66 (2d Cir. 2006) ("The use of similar language, let alone identical language, in two different provisions of the same statute is, as the Supreme Court has emphasized, 'a strong indication that [the two provisions] should be interpreted pari passu,' i.e., in the same manner" (quoting Northcross v. Bd. of Ed. of Memphis City Sch., 412 U.S. 427, 428 (1973) (per curiam))); U.S. v. Ness, 466 F.3d 79, 82 n.1 (2d Cir. 2006) ("We follow the general rule that the use of identical language in different provisions of a statute is a strong indication that they are to be given the same interpretation, absent clear evidence that Congress intended otherwise").

   The Second Circuit's suggested outcome is, in fact, where two of the three Circuits that have decided the issue have come out. Those Circuits have held that a resident alien

is still an alien--notwithstanding the 1988 amendment--and that this destroys diversity under section 1332(a)(2) when (as here) aliens or resident aliens are on opposite sides. See Intec USA, LLC v. Engle, 467 F.3d 1038, 1041-44 (7th Cir. 2006) (subject matter jurisdiction was lacking because the defendants were aliens and one of six members of the plaintiff limited liability company was a permanent resident alien; the 1988 amendment "gives every permanent-resident alien two citizenships" and, since the plaintiff thus had "dual citizenship", it was an alien for diversity purposes); Saadeh v. Farouki, 107 F.3d 52, 61 (D.C. Cir. 1997) ("[T]he 1988 amendment to § 1332 did not confer jurisdiction over a lawsuit between an alien on one side, and an alien and a citizen on the other side, regardless of the residence status of the aliens").

As the D.C. Circuit explained in Saadeh, any other result "would both partially abrogate the longstanding rule of complete diversity, and create federal diversity jurisdiction over a lawsuit brought by one alien against another alien", when "[t]he judicial power of the United States does not extend to such an action under the Diversity Clause of Article III". 107 F.3d at 58. "[W]e conclude that Congress intended to contract diversity jurisdiction through the 1988 amendment to § 1332(a), not to expand it by abrogating the longstanding rule that complete diversity is destroyed in lawsuits between aliens". Id. at 60.[8]

The only Circuit to reach a different result is the Third Circuit in Singh v. Daimler-Benz AG, 9 F.3d 303 (3d Cir. 1993)--an early case that was the first to consider the 1988 amendment. However, Judge Easterbrook, writing for the Seventh Circuit thirteen years later in Intec, concluded that "Singh is wrong" because it failed to appreciate the 1988 amendment's ambiguity--i.e., the statute could be read to mean either that a permanent resident alien is exclusively a citizen of the state of his/her domicile or that he/she is a citizen of both that

---

[8] The amendment contracted diversity jurisdiction by eliminating it in actions between a U.S. citizen and an alien who is domiciled in the same state. See Saadeh, 107 F.3d at 59.

state and his/her foreign country. Intec, 467 F.3d at 1042-43. As a result, according to Judge Easterbrook, Singh erroneously did not consider the amendment's legislative history--which reveals a strong congressional intent to restrict diversity jurisdiction not enlarge it and therefore supports the latter reading of the statute rather than the former. Id.

This overwhelming view among the courts is consistent with the context, purpose and indisputable legislative intent of the 1988 amendment. As Judge Easterbrook pointed out, the amendment is in fact ambiguous (contrary to what the Third Circuit said in Singh). Intec, 467 F.3d at 1042. As a result, the Court may resort to legislative history and should interpret the statute to promote the intent that the legislative history reveals. See Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG, 335 F.3d 52, 57 (2d Cir. 2003) ("where statutory language is ambiguous a court may resort to the canons of statutory interpretation and to the statute's legislative history to resolve the ambiguity").

There is no doubt that the 1988 amendment "was intended to restrict, not expand, diversity jurisdiction". See, e.g., A.T.X. Export, Ltd. v. Mendler, 849 F. Supp. 283, 284 (S.D.N.Y. 1994); see also Intec, 467 F.3d at 1042 ("the language [of the amendment] originated in a proposal to the Judicial Conference of the United States, which asked Congress to enact it as a means to curtail diversity jurisdiction"); Saadeh, 107 F.3d at 61 ("with regard to diversity the Judicial Improvements Act was designed to contract the scope of jurisdiction"). That intent can be effectuated either by taking the approach of the D.C. Circuit (which held that the 1988 amendment does not apply at all in alien v. alien cases) or by adopting the Seventh Circuit approach (which applied the statute in alien v. alien suits but would always defeat diversity under section 1332(a)(2) in those cases because of the permanent resident alien's dual citizenship). Under either approach, the complaint cannot stand against Deloitte.

13

Finally, as the D.C. Circuit recognized in Saadeh, 107 F.3d at 58, any interpretation of the 1988 amendment that permitted suits between aliens would raise serious concerns under the Diversity Clause of Article III of the U.S. Constitution, which does not give Congress power to grant federal courts jurisdiction over an action between aliens. See Lloyd's Bank Plc, 817 F. Supp. at 416 (collecting cases); see also Hodgson v. Bowerbank, 5 Cranch 303, 9 U.S. 303 (1809) ("the statute cannot extend the jurisdiction beyond the limits of the constitution"). Heeding the 1988 amendment's legislative history and interpreting the statute to narrow diversity jurisdiction, as the vast majority of courts have done, avoids this potential constitutional problem--which courts should always attempt to do in construing ambiguous statutes. See Saadeh, 107 F.3d at 61; see also Empire HealthChoice Assurance, Inc. v. McVeigh, 396 F.3d 136, 144 (2d Cir. 2005) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems", courts should "construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress" (quotation marks omitted)).

For all the above reasons, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO SATISFY THE PARTICULARITY REQUIREMENTS OF FED. R. CIV. P. 9(b).

Even if the Court had subject matter jurisdiction--and it does not--it would still have to dismiss the Complaint as against Deloitte for failure to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).

### A.    Rule 9(b) Requires Plaintiffs to Plead Claims Sounding In Fraud with Particularity.

Rule 9(b) provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and

14

other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Courts

have interpreted the rule to mandate that a complaint based upon fraud satisfy two requirements.

First, the claims must be pleaded with "particularity"--which means that the

complaint has to "(1) detail the statements (or omissions) that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

made, and (4) explain why the statements (or omissions) were fraudulent". Eternity Global

Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 186-87 (2d Cir. 2004)

(citation omitted); see ATSI Commc'ns, Inc., 493 F.3d at 99; Rombach v. Chang, 355 F.3d 164,

170 (2d Cir. 2004) (same). A plaintiff cannot satisfy that requirement with "[a]llegations that are

conclusory or unsupported by factual assertions". ATSI Commc'ns, Inc., 493 F.3d at 99; see

Baena v. Woori Bank, No. 05 Civ. 7018, 2008 WL 110908, at *2 (S.D.N.Y. Jan. 2, 2008)

("[c]onclusory allegations unsupported by factual assertions lack the particulars that Rule 9(b)

requires") (citations omitted); Griffin v. McNiff, 744 F. Supp. 1237, 1244 (S.D.N.Y. 1990),

aff'd, 996 F.2d 303 (2d Cir. 1993) ("[t]he serious nature of a charge of fraud . . . renders mere

conclusory allegations that defendants acted fraudulently insufficient to satisfy Rule 9(b)"). The

requirements of Rule 9(b) are particularly important with respect to claims against auditors, who

frequently become magnets for fraud allegations when business decisions turn sour. See Griffin,

744 F. Supp. at 1248 (one of the purposes of Rule 9(b) is "to protect the reputation of

accountants and other professionals from injury caused by unsubstantiated charges of fraud").[9]

---

[9] See also Rombach, 355 F.3d at 171 (Rule 9(b) is intended "to safeguard a defendant's
reputation from improvident charges of wrongdoing" (quotation and citation omitted)); In re
Axis Cap. Holdings Ltd. Secs. Litig., 456 F. Supp. 2d 576, 584 (S.D.N.Y. 2006) ("The
requirements of Rule 9(b) . . . operate to deter the filing of complaints as a pretext for the
discovery of unknown wrongs, to protect professionals from the harm that comes from being
subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the

Second, the Complaint must "allege facts that give rise to a strong inference of fraudulent intent". Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quotation and citation omitted); see Eternity, 375 F.3d at 187; Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996) (same). A plaintiff can satisfy the "strong inference" prong in one of two ways: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness". Lerner, 459 F.3d at 290-91; Eternity, 375 F.3d at 187 (same).

**B.      Because The Claims Against Deloitte Sound In Fraud or Are "Inextricably Intertwined" With Underlying Fraud Allegations, Plaintiffs Must Satisfy Rule 9(b) As to Every Such Claim.**

The heightened pleading requirements of Rule 9(b) apply to more than claims of fraud qua fraud. Instead, Rule 9(b) is "applicable to any claim that 'sounds in fraud,' regardless of whether fraud is an element of the claim", including "any cause of action that bears a close legal relationship to fraud or mistake, as well as to individual claims that, as pleaded, are predicated on allegations of fraud". Matsumura v. Benihana Nat'l Corp., No. 06 Civ. 7609, 2008 WL 282021, at *4 (S.D.N.Y. Jan. 25, 2008) (citations omitted).[10]

Because the Complaint here makes no attempt to disentangle the three claims against Deloitte from the larger collection of fraud allegations against all defendants, each claim against Deloitte must satisfy Rule 9). The negligence and accounting malpractice claim (Count Six) must satisfy Rule 9(b) because it is based upon the conclusory allegations, inter alia, that

---

parties and society enormous social and economic costs absent some factual basis") (quotations omitted).

[10] See also Rombach, 355 F.3d at 171 (the phrase "all averments of fraud" in Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action"); In re Axis Cap. Holdings Ltd. Sec. Litig., 456 F. Supp. 2d at 598 (applying Rule 9(b) to nonfraud claims "inextricably intertwined with the allegations underlying plaintiffs' fraud claims").

Deloitte's (unspecified) conduct was "tantamount to fraud" (Compl. ¶¶ 170, 171) and that

Deloitte's audits were "faulty, if not fraudulent" (again without any specificity) (Compl. ¶ 172).

See In re Ultrafem Inc. Secs. Litig., 91 F. Supp. 2d 678, 690-91 (S.D.N.Y. 2000) (applying Rule

9(b) where "plaintiffs [made] little, if any, effort to differentiate their asserted negligence claims

from the fraud claims which permeate the Complaint"). The fraud, breach of fiduciary duty and

"aiding and abetting" claim (Count Seven) must satisfy Rule 9(b) because it is based upon the

conclusory allegations, inter alia, that Deloitte had "knowledge of the fraudulent scheme" and

"continued in or joined in the fraud". (Compl. ¶ 176.)  See Rosner v. Bank of China, 528 F.

Supp. 2d 419, 425-26 (S.D.N.Y. 2007) ("The Second Circuit has applied the heightened pleading

requirements of Rule 9(b) to claims for aiding and abetting fraud"); A.I.A. Holdings, S.A. v.

Lehman Bros. Inc., No. 97 Civ. 4978, 1998 WL 159059, at *8 (S.D.N.Y. Apr. 1, 1998) (breach

of fiduciary duty claims and aiding and abetting fraud claims are subject to Rule 9(b) because

they "primarily rely upon allegations of fraudulent conduct").  Finally, the unjust enrichment

claim (Count Eight) must satisfy Rule 9(b) because it is based upon the conclusory allegation,

inter alia, that the enrichment "result[ed]" from "the fraudulent scheme". (Compl. ¶ 182.)  See

Daly v. Castro Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (Rule 9(b) applies to claims that

are "premised on fraud", including unjust enrichment).

   At bottom, each claim against Deloitte arises from the general and conclusory

allegations of fraud that form the foundation stone of the Complaint.  Indeed, the Complaint

opens with a sweeping averment that it seeks recovery of losses "as a direct and proximate result

of a sophisticated fraud perpetrated by Bear Stearns & Co. Inc., its co-defendant affiliates,

subsidiaries and employees . . ., and co-defendant Deloitte & Touche LLP".  (Compl. ¶ 1;

emphasis added).  From there, the Complaint is peppered with (unsupported) allegations of fraud

against Deloitte, including conclusory charges that "the Bear Stearns Defendants perpetuated [a] fraud" and "Deloitte knowingly or recklessly facilitated this scheme" (Compl. ¶ 6), that "Deloitte further perpetuated the Bear Stearns Defendants' fraud" (Compl. ¶ 58) and that Deloitte "furthered the Bear Stearns Defendants' fraudulent scheme" (Compl. ¶ 100).

In a section of the Complaint headed "The Fraud", Plaintiffs accuse Deloitte of "assur[ing] investors that it was . . . testing the Bear Stearns Defendants' 'manager marks'" (Compl. ¶ 72), of having "learned, or [been] obligated to discover [the fraud] and willfully or recklessly fail[ing] to do so" (Compl. ¶ 74), of having "knowingly facilitated this scheme" (Compl. ¶ 75) and--in a nine paragraph subsection headed "Deloitte & Touche LLP" within the main "Fraud" section--of having "under[taken] insufficient steps to test the [manager's] marks" (Compl. ¶ 99) and "further[ing] the Bear Stearns Defendants' fraudulent scheme" (Compl. ¶ 100).

In short, as the foregoing makes plain, each claim against Deloitte is "predicated on allegations of fraud". See Matsumura, 2008 WL 282021, at *4. The very essence of the charges sounds in fraud. As a result, the Complaint must satisfy Rule 9(b) as to every claim.

**C.    Plaintiffs Fail to Plead The Claims Against Deloitte with Particularity.**

Plaintiffs fail to plead the claims against Deloitte with the particularity that Rule 9(b) requires. Instead, the Complaint is built upon a cascade of generalizations, with no supporting detail and with inferential allegations that simply do not follow from the conclusory premises upon which they are supposedly based.

**1.    <u>Plaintiffs' Principal Allegation Is Unsupported and Illogical</u>.**

The principal allegation that Plaintiffs make against Deloitte not only is wholly conclusory but also logically makes no sense. In paragraph 99 of the Complaint, Plaintiffs charge that, "[a]s the audit report <u>does not identify</u> any testing, <u>it appears that</u> the auditors merely

18

relied on management's representations . . . or <u>undertook insufficient steps to test</u> the
[manager's] marks . . . ." (Emphasis added). In other words, according to Plaintiffs, there was
<u>no</u> testing because the audit report does not <u>describe</u> any testing.

Merely to state the inference is to defeat it. At the most basic level, since audit
reports customarily do not--and are not required to--identify the testing that was done, Plaintiffs'
conclusion does not follow from their premise. It is a non sequitur.

Plaintiffs obviously realize that defect, because they qualify their accusation with
the conjectural phrase "it appears that"--which only highlights the problem. The fact is that,
under GAAS, audit reports simply need not describe any specific testing. If it were otherwise,
the reports would be endless. Rather, in the very section cited by Plaintiffs in paragraph 97 of
the Complaint, GAAS (in relevant part) requires only that an audit report state that "the audit
was conducted in accordance with generally accepted auditing standards" (AU § 508.08(d)) and
involved "[e]xamining, on a test basis, evidence supporting the amounts and disclosures in the
financial statements" (AU § 508.08(f)(1)) (Shulman Aff. Ex. 1).

That is precisely what the audit reports here did. (<u>See</u> 2006 Financial Statements
and Independent Auditors' Reports, High-Grade Overseas Fund, at 2, and High Grade Master
Fund, at 20 (Apr. 24, 2007) (Shulman Aff. Ex. 2) ("We conducted our audit in accordance with
auditing standards generally accepted in the United States of America. . . . An audit also includes
examining, on a test basis, evidence supporting the amounts and disclosures in the financial
statements . . ."); 2006 Financial Statements and Independent Auditors' Reports, High-Grade

Enhanced Overseas Fund, at 2, and High Grade Enhanced Master Fund, at 20 (Apr. 24, 2007) (Shulman Aff. Ex. 3) (same).)[11]

That Deloitte did what GAAS requires clearly cannot support an inference of fraud. In fact, because Plaintiffs' allegation is not "plausible on its face", any claim based upon it could not survive even the less stringent pleading requirement of Fed. R. Civ. P. 8(a). See ATSI Commc'ns, Inc, 493 F.3d at 98 n.2 (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007)); Arnold Chevrolet LLC v. Tribune Co., No. 04-CV-3097, 2007 WL 2743490, at *2 (E.D.N.Y. Sept. 17, 2007).

### 2.    **Plaintiffs' Other Allegations Are Wholly Conclusory.**

Plaintiffs' other allegations against Deloitte fare no better. They are wholly conclusory, with none of the particularity that Rule 9(b) requires. Thus, Plaintiffs charge that Deloitte:

- "assured investors that it was conducting independent, thorough, and objective audits" (Compl. ¶¶ 3, 72);

- "learned [that the Overseas Funds were 'doomed to failure'], or was obligated to discover [that fact] and willfully and recklessly failed to do so" (Compl. ¶¶ 5, 74);

- "recklessly facilitated this [Bear Stearns] scheme, through its unqualified opinions endorsing the Overseas Funds' financial reporting" (Compl. ¶ 6);

- "further perpetuated the Bear Stearns Defendants' fraud by certifying the 'mark to model' valuations annually" (Compl. ¶ 58);

- "knowingly facilitated this [Bear Stearns] scheme" (Compl. ¶ 75); and

- "possibly succumbed to pressure from the Bear Stearns Defendants" and "thereby furthered the Bear Stearns Defendants' fraudulent scheme" (Compl. ¶ 100).

---

[11] As mentioned supra, at 6, the Court may consider these documents on this motion because they are incorporated in, relied upon and even quoted in the Complaint.

None of those averments specifies exactly what Deloitte did that was fraudulent, who did it, when and how it was done, what statements were made or why they were intentionally false. As a result, the allegations fail under Rule 9(b). See Shields v. Citytrust Bankcorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (allegations "that Defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other things" were "so broad and conclusory as to be meaningless") (citation omitted); Dietrich v. Bauer, 76 F. Supp. 2d 312, 335 (S.D.N.Y. 1999) ("conclusory characterizations set forth by words such as 'devised' and 'participated', without factual support, are insufficient under Rule 9(b)" (citation omitted)).

### 3.    The Only Specific Allegations In the Complaint Actually Disprove Plaintiffs' Claims.

The Complaint's only allegations about Deloitte that have any specificity at all actually disprove Plaintiffs' claims of fraud. Thus, in paragraph 95 of the Complaint, Plaintiffs acknowledge that Deloitte in fact directly warned investors about the manager's marks valuation system. With particularity, Plaintiffs quote explicit language from Deloitte's audit reports for the year ended December 31, 2006.

The High-Grade Overseas Fund warning stated, in pertinent part, that "70.19% of the Master Fund's net assets, represents securities which were fair valued by the Master Fund's management", that there was an "absence of readily ascertainable market values" for those securities and that "[t]hese values may differ from the values that would have been used ha[d] a ready market for these investments existed, and the differences could be material". (Compl. ¶ 95; emphasis added.) The same warning appears in the High-Grade Enhanced Overseas Fund report. In pertinent part, Deloitte warned that "63.10% of the Master Fund's net assets, represents securities which were fair valued by the Master Fund's management", that there was an "absence of readily ascertainable market values" for those securities and that "[t]hese values

21

may differ from the values that would have been used had a ready market for these investments existed, and <u>the differences could be material</u>". (Compl. ¶ 95; emphasis added.)[12]

That, of course, is flatly inconsistent with Deloitte's being involved in a fraud to conceal the risks in the manager's marks valuation practice. Plaintiffs are now complaining that the real value of the Funds' assets was materially different from the manager's marks value. That is just what Deloitte warned investors about.

In short, paragraph 95 of the Complaint destroys Plaintiffs' claims against Deloitte.

### D.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Fraudulent Intent.

In addition to the Complaint's other defects under Rule 9(b), it also fails to allege "facts that give rise to a strong inference of fraudulent intent". <u>Lerner</u>, 459 F.3d at 290 (citation omitted); <u>see</u> <u>Chill</u>, 101 F.3d at 267 (same). It alleges neither facts showing "motive and opportunity" nor facts constituting "strong circumstantial evidence of conscious behavior or recklessness". <u>Lerner</u>, 459 F.3d at 290; <u>Eternity</u>, 375 F.3d at 187 (same).

#### 1.    Plaintiffs Fail to Plead Motive and Opportunity.

The sole alleged "motive" for Deloitte's behavior was "to provide continuing and substantial fees". (Compl. ¶ 100.) A long line of cases uniformly holds that such an allegation is insufficient.

Generalized allegations that a defendant stands to maintain a business relationship (or gain a new one) do not support an inference of motive to commit fraud. <u>See</u> <u>In re JP Morgan</u>

---

[12] In addition, schedules attached to the reports specifically identified--by asterisk--the assets "being fair valued by the Investment Manager". (<u>See</u> 2006 Financial Statements with Independent Auditors' Reports, High-Grade Master Fund, at 22-26 (Shulman Aff. Ex. 2); 2006 Financial Statements with Independent Auditors' Reports, High-Grade Enhanced Master Fund, at 22-25 (Shulman Aff. Ex. 3).)

Chase Secs. Litig., 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005) ("[g]eneralized allegations of intent to maintain lucrative business relationships and to establish new ones do not set forth a motive for scienter purposes"); Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) ("Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud").

The same is true with respect to auditors in particular. Conclusory averments that an auditor compromised the integrity of an audit for purposes of generating fees or maintaining a client relationship are inadequate. See Zucker v. Sasaki, 963 F. Supp. 301, 309 (S.D.N.Y. 1997) ("mere receipt of compensation and the maintenance of a profitable professional business relationship for auditing services does not constitute a sufficient motive for purposes of pleading scienter"; it would be irrational to "assume that Ernst & Young willingly condoned Cygne's fraud in order to preserve its fee, at the risk of jeopardizing its reputation and license as well as the possibility of damages in an amount much greater than its fee" (citations and quotations omitted)); cf. Four Finger Art Factory v. Dinicola, No. 99 Civ. 1259, 2001 WL 21248, at *5 (S.D.N.Y. Jan. 9, 2001) ("general allegation that [defendant attorney] was motivated to commit fraud in the hope of obtaining a fee is insufficient to establish fraudulent intent under Rule 9(b)").

### 2.    Plaintiffs Fail to Plead Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness.

Where, as here, "motive and opportunity" are not adequately pleaded, "the strength of the circumstantial allegations must be correspondingly greater". Kalnit, 264 F.3d at 142 (quotation marks omitted); see Sterling Interiors Group, Inc. v. Haworth, Inc., No. 94 Civ. 9216, 1996 WL 426379, at *20 (S.D.N.Y. July 30, 1996); see also Zucker, 963 F. Supp. at 309

("[w]here motive is not alleged and plaintiff relies entirely on allegations of recklessness in asserting scienter, the evidence presented must be proportionally greater").

Plaintiffs' wholly conclusory allegations, as summarized above, are thoroughly inadequate in this regard. See Four Finger Art Factory, 2001 WL 21248, at *5 ("[a]ny allegations in the amended complaint that [defendant] acted with conscious disregard for the truth are conclusory and vague and are insufficient to allege fraudulent intent under Rule 9(b)"); Phipps v. Comprehensive Cmty. Dev. Corp., 152 F. Supp. 2d 443, 455 (S.D.N.Y. 2001) (same); Griffin, 744 F. Supp. at 1248 n.11 (merely alleging that the company's auditor must have known or recklessly disregarded the facts is insufficient to support a strong inference of scienter).

Indeed, when the best that Plaintiffs can do is offer the weak conjecture that "it appears that" Deloitte engaged in misconduct (Compl. ¶ 99; emphasis added) and "it further appears that" Deloitte acted recklessly or "possibly succumbed" to management pressure (Compl. ¶ 100; emphasis added), it becomes obvious that Plaintiffs themselves know that they cannot meet the Rule 9(b) standard. See Wexner v. First Manhattan Corp., 902 F.2d 169, 173 (2d Cir. 1990) ("Clearly, an inference that the defendants knew their statements to be false cannot be based on allegations which are themselves speculative") (citations omitted).

Finally (and perhaps most importantly), the Complaint's one particularized allegation about Deloitte--i.e., regarding the warnings in the 2006 audit reports discussed supra--is flatly inconsistent with any conscious misbehavior or recklessness at all. Plaintiffs acknowledge that Deloitte actually cautioned investors about the very potential gap between fair value and market value upon which the Complaint is based. Having specifically warned investors of this, Deloitte could not possibly have been trying to conceal it from them. See O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676-77 (2d Cir. 1991) (plaintiffs' claim

that Price Waterhouse "knew of the impossibility of the venture succeeding commercially" failed under Rule 9(b) because the audit reports stated that certain conclusions "were based on market assumptions" and "that the projections on which the report was based could easily fail to come to fruition").

In sum, Plaintiffs do not even come close to pleading facts that give rise to a strong inference of scienter.

**Conclusion**

For all the reasons set forth above, the Complaint should be dismissed as against Deloitte for lack of subject matter jurisdiction or, in the alternative, for failure to comply with Fed. R. Civ. P. 9(b). Since Deloitte offered Plaintiffs an opportunity to attempt to cure the defects in the Complaint upon which this motion is based--and they refused even to try (see Ltr. from J. Wine to R. Nicholas, dated Apr. 10, 2008 (Shulman Aff. Ex. 4); Ltr. from R. Nicholas to J. Wine, dated Apr. 17, 2008 (Shulman Aff. Ex. 5))--the dismissal should be with prejudice.

Dated: May 7, 2008

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by _____

Max R. Shulman
A member of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
mshulman@cravath.com

Attorneys for Defendant Deloitte & Touche LLP

25