**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

GEOFFREY VARGA and WILLIAM
CLEGHORN, as Joint Voluntary Liquidators of
Bear Stearns High-Grade Structured Credit
Strategies (Overseas) Ltd. and Bear Stearns
High-Grade Structured Credit Strategies
Enhanced Leverage (Overseas) Ltd., and as
assignees of shares in Bear Stearns High-Grade
Structured Credit Strategies Enhanced Leverage
(Overseas) Ltd.; and STILLWATER CAPITAL
PARTNERS L.P. and ESSEX FUND LIMITED,
individually and derivatively on behalf of Bear
Stearns High-Grade Structured Credit Strategies
Fund, L.P., and Bear Stearns High-Grade
Structured Credit Strategies Enhanced Leverage
Fund, L.P.,

Case No. 08-CV-
03397(BSJ)(HBP)

Plaintiffs,

**AMENDED COMPLAINT**

**(JURY TRIAL DEMANDED)**

-against-

THE BEAR STEARNS COMPANIES, INC.,
BEAR STEARNS ASSET MANAGEMENT
INC., BEAR STEARNS & CO. INC., RALPH
CIOFFI, MATTHEW TANNIN, RAYMOND
MCGARRIGAL, GEORGE BUXTON, BARRY
JOSEPH COHEN, GERALD R. CUMMINS,
DAVID SANDELOVSKY, GREG QUENTAL,
MICHAEL ERNEST GUARASCI, DELOITTE
& TOUCHE LLP, DELOITTE & TOUCHE
(CAYMAN), WALKERS FUND SERVICES
LIMITED, SCOTT LENNON AND MICHELE
WILSON-CLARKE; and BEAR STEARNS
HIGH-GRADE STRUCTURED CREDIT
STRATEGIES FUND, L.P., AND BEAR
STEARNS HIGH-GRADE STRUCTURED
CREDIT STRATEGIES ENHANCED
LEVERAGE FUND, L.P., nominal defendants,

Defendants.

-------------------------------------------------------- x

RECEIVED
08 JUN 30 PM 6:3
U.S. DISTRICT COURT
S.D.N.Y.

# TABLE OF CONTENTS

**Page**

DEFINED TERMS ................................................................................. iii

I.    NATURE OF THE ACTION ......................................................... 3

II.   JURISDICTION AND VENUE ..................................................... 10

III.  PARTIES ...................................................................................... 11
      A.   Plaintiffs ........................................................................... 11
      B.   Defendants ........................................................................ 14
      C.   Other Relevant Entities .................................................... 21

IV.   FACTS .......................................................................................... 22
      A.   The High-Grade Funds Fraud ........................................... 22
           1.   Structure and Initial Marketing of the High-Grade Funds ....... 22
           2.   The Bear Stearns Defendants' Management of, and
                Dealings with, the High-Grade Funds ........................... 34

      B.   The High-Grade Enhanced Funds Fraud ........................... 51
           1.   Structure and Initial Marketing of The High-Grade
                Enhanced Funds .......................................................... 51
           2.   The Bear Stearns Defendants' Management of, and
                Dealings With, the High-Grade Enhanced Funds ........... 64
      C.   All Funds' Pervasive Insider Transactions with Bear Stearns
           and BSAM ......................................................................... 72

      D.   The Bear Stearns Defendants' Ongoing Fraud, and Failed
           Efforts to Foist the Funds' Risks Upon the Public Through the
           Everquest IPO .................................................................. 80
      E.   The Blow-Ups That Helped Launch the Worldwide Credit
           Crisis ................................................................................ 83

      F.   The Deloitte Defendants' Unique Role in the Fraud ........... 91
           1.   The Deloitte Defendants' Years of Clean Audit Opinions ....... 95
           2.   The Ever-Growing Number of Improper Insider
                Transactions ............................................................... 98
           3.   Generally Accepted Accounting Principles Specifically
                Relating to Manager Estimates of Asset Values .............. 105
           4.   Standards for a Proper Audit ........................................ 106
           5.   The Deloitte Defendants Failed to Fulfill the Proper
                Auditing Standards ...................................................... 109
           6.   The Deloitte Defendants' Specific and Multiple Failings ..... 111
                a.   Evidential Matter (AU § 326) ................................. 113
                b.   The Everquest Debacle and the Overstatement of
                     Year End 2006 NAVs ........................................... 117
                c.   Subsequent Events (AU § 560) .............................. 125
                d.   The Egregious Overstatement of Assets in the
                     2006 Fiscal Year Financial Statements ................... 129
                     (i)   The ABX Index ............................................. 130

(ii)    Subprime Lenders Face Significant
Problems ........................................................ 132
(iii)    Everquest's Revised December 2006 NAV ...... 136
e.    The Deloitte Defendants Were Familiar With the
Requirements of AU § 560 ....................................... 137
f.    The Deloitte Defendants Failed to Advise that the
Funds Lacked the Ability to Continue as a Going
Concern (AU § 341) ..................................... 139

G.    The Deloitte Defendants Have Significant Contacts With the
United States and New York_ ........................................... 144

H.    The Dereliction of Duties by the BSAM Directors .......................... 147

I.    The Walkers Defendants' Unique Role in the Fraud ....................... 150
1.    The Walkers Group ........................................... 151
2.    The Walkers Defendants' Duties With Respect to the
Overseas Funds ........................................ 154
3.    The Walkers Defendants' Pervasive Breaches and Other
Wrongful Acts During the Lives of the Funds ....................... 155
4.    The Walkers Defendants Worked With the Bear Stearns
Defendants to Thwart Any Exercise of Investor Rights,
and Avoid Commencement of This Action ........................... 166

J.    The Walkers Defendants Have Significant Contacts With the
United States and New York ........................................... 178

V.    DERIVATIVE ALLEGATIONS ............................................. 182

VI.    CLAIMS FOR RELIEF ................................................... 191

VII.    JURY TRIAL DEMAND .................................................. 231

## DEFINED TERMS

<u>ABS CDOs:</u>  Asset-backed collateralized debt obligations-related investments.

<u>Advisers Act:</u>  U.S. Investment Advisers Act of 1940.

<u>AICPA:</u>  American Institute of Certified Public Accountants.

<u>AIMA Questionnaire:</u>  Questionnaire prepared by the Bear Stearns Defendants, in 2005, for the Alternative Investment Management Association.

<u>"AU §":</u>  Sections of the Statements of Auditing Standards, which are codified by the American Institute of Certified Public Accountants.

<u>Bear Measurisk:</u>  Bear Measurisk, LLC, a wholly-owned subsidiary of BSAM and provider of risk measurement tools and analytics to the investment community.

<u>Bear Stearns:</u>  Bear Stearns Companies, Bear Stearns Co., and BSAM.

<u>Bear Stearns Co.:</u>  Bear, Stearns & Co. Inc.

<u>Bear Stearns Companies:</u>  The Bear Stearns Companies, Inc.

<u>Bear Stearns Defendants:</u>  Bear Stearns Companies, Bear Stearns Co., BSAM, Ralph Cioffi, Matthew Tannin, Ray McGarrigal, George Buxton, Barry Joseph Cohen, Gerald R. Cummins, David Sandelovosky, Greg Quental and Michael Ernest Guarasci.

<u>Beighton:</u>  Kristin Beighton, of KPMG Cayman, appointed as one of the liquidators of the Master Funds.

<u>BSAM:</u>  Bear Stearns Asset Management Inc.

<u>BSAM Directors:</u>  Defendants Cohen, Cummins, Sandelovsky, Quental and Guarasci.

<u>Buxton:</u>  Defendant, George Buxton, who was a Senior Managing Director of Bear Stearns Co.

<u>CDOs:</u>  Collateralized debt obligations.

<u>CDO-squareds:</u>  CDOs comprised of slices of other CDOs.

<u>CDO Report:</u>  Report issued by an employee of BSAM, on April 19, 2007, showing that the CDOs in the Funds were worth substantially less than previously thought.

<u>Cerberus:</u>  Cerberus Capital Management.

<u>Chapter 15 Petition:</u>  Petition filed in the Bankruptcy Court in New York, by Whicker and Beighton, in August 2007, seeking to have the liquidation proceedings pending in the Cayman Islands with respect to the Master Funds

recognized as "foreign main proceedings" or "foreign nonmain proceedings," pursuant to Chapter 15 of Title 11 of the United States Bankruptcy Code.

Cioffi:  Defendant, Ralph Cioffi, who was a Senior Managing Director of both BSAM and Bear Stearns Co. and a member of the Board of Directors of Bear Stearns Co.

Cleghorn:  Plaintiff, William Cleghorn.

Cohen:  Defendant, Barry Joseph Cohen, who was a director of the High-Grade Overseas Funds and its Master Fund, a Senior Managing Director and Director of Alternative Investments (Hedge Funds) for BSAM, and a member of the board of directors of Bear Stearns Co.

COMs (or Offering Memoranda):  Confidential offering memoranda.

Cummins:  Defendant, Gerald R. Cummins, who was a director of the High-Grade Overseas Fund and its Master Fund beginning in August 2006, a director of the High-Grade Enhanced Overseas Fund and its Master Funds at all relevant times, and a Managing Director of BSAM responsible for hedge fund-middle office support and firm-wide operations risk.

Deloitte Cayman:  Deloitte & Touche.

Deloitte Defendants:  Deloitte US and Deloitte Cayman.

Deloitte US:  Deloitte & Touche LLP.

Domestic Funds:  The High-Grade Domestic Fund and the High-Grade Enhanced Domestic Fund.

DTT:  Deloitte Touche Tohmatsu.

Everquest:  Everquest Financial Ltd.

Essex:  Plaintiff, Essex Fund Limited.

FTI:  FTI Capital Advisors, LLC.

Funds:  The High-Grade Domestic Fund, the High-Grade Enhanced Domestic Fund, the High-Grade Overseas Fund, and the High-Grade Enhanced Overseas Fund.

GAAP:  U.S. Generally Accepted Accounting Principles.

GAAS:  Generally Accepted Accounting Standards.

Guarasci:  Defendant, Michael Ernest Guarasci, who was a director of the High-Grade Overseas Fund and its Master Fund from September 2003 until October 2005, and a Senior Managing Director and Chief Financial Officer of BSAM, responsible for financial reporting, operations, information technology and risk management.

**Heis:**  Richard Heis, of KPMG (Canada), appointed as one of the liquidators of the High-Grade Enhanced Domestic Fund.

**High-Grade Domestic Fund:**  Bear Stearns High-Grade Structured Credit Strategies Fund, L.P.

**High Grade Enhanced COM:**  June 2006 Confidential Offering Memoranda for the High-Grade Enhanced Fund.

**High-Grade Enhanced Domestic Fund:**  Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Fund, L.P.

**High-Grade Enhanced Funds:**  The High-Grade Enhanced Domestic Fund and the High-Grade Enhanced Overseas Fund.

**High-Grade Enhanced Funds COMs:**  The High-Grade Enhanced Fund COM and the High-Grade Enhanced Overseas COM.

**High-Grade Enhanced Overseas Fund:**  Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd.

**High-Grade Enhanced Overseas COM:**  August 2006 Confidential Offering Memorandum for the High-Grade Enhanced Overseas Fund.

**High-Grade Funds:**  The High-Grade Domestic Fund and the High-Grade Overseas Fund.

**High-Grade Overseas Fund:**  Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd.

**IPO:**  Initial public offering.

**Lennon:**  Defendant, Scott Lennon, is a Senior Vice President of Walkers FS, which provided services to many of the Funds managed by the Bear Stearns Defendants, and served on the Board of Directors of both of the Overseas Funds.

**Liquidators:**  The joint voluntary liquidators of the Overseas Funds, Varga and Cleghorn.

**Management Defendants:**  Cioffi, Tannin, McGarrigal and Buxton.

**Massachusetts Complaint:**  Administrative complaint filed by the Securities Division of the Office of the Secretary of the Commonwealth of Massachusetts, on November 14, 2007, against BSAM (Docket No. E-2007-0064).

**Master Funds:**  Bear Stearns High-Grade Structured Credit Strategies Master Fund Ltd. and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Master Fund Ltd.

**McGarrigal:**  Defendant, Ray McGarrigal, who was a Managing Director or Senior Managing Director of BSAM and a Portfolio Manager of both the High-Grade Overseas Fund and the High-Grade Enhanced Overseas Fund.

Milsom:  John Milsom, of KPMG (Canada), appointed as one of the liquidators of the High-Grade Enhanced Domestic Fund.

NAV:  Net asset value.

New Century:  New Century Financial Corp.

NovaStar:  NovaStar Financial Corp.

Offering Memoranda (or COMs):  Confidential offering memoranda.

Overseas Funds:  The High-Grade Overseas Fund and the High-Grade Enhanced Overseas Fund.

Quental:  Defendant, Greg Quental, who was a director of the High-Grade Overseas Fund and its Master Fund beginning on March 28, 2007, President and Chief Executive Officer of Bear Measurisk from February 2004 through April 2005, and a Senior Managing Director, Director of Hedge Funds and Chairman of Bear Measurisk's Board of Directors, responsible for BSAM's HedgeSelect business and Due Diligence Group.

Petitioning Investor:  An investor holding more than 10% interest in both the Overseas and Domestic High-Grade Enhanced Funds, who, on August 10, 2007, sent Removal Petitions to the Board of the High-Grade Enhanced Overseas Fund and to BSAM, as general partner of the High-Grade Enhanced Fund.

Principal Trade Letters (or PTLs):  Consent letters that, pursuant to the Investment Advisers Act of 1940, are required to be obtained from independent directors prior to any "principal trades," trades between the High-Grade Master Fund and other Bear Stearns entities or Bear Stearns clients which posed conflict of interest issues.

Ratings Agencies:  U.S. commercial credit rating agencies Standard & Poors, Moody's and Fitch.

Removal Petitions:  Petitions to remove the Board of the High-Grade Enhanced Overseas Fund, and BSAM, as general partner of the High-Grade Enhanced Fund, served on August 10, 2007, by an investor holding more than 10% of all outstanding shares.

Sandelovsky:  Defendant, David Sandelovosky, who was a director of the High-Grade Overseas Fund and its Master Fund from October 2005 until March 28, 2007, a director of the High-Grade Enhanced Overseas Fund and its Master Fund from its inception until March 28, 2007, and a Senior Managing Director of Alternative Investments (Hedge Funds) for BSAM.

SEC:  The Securities and Exchange Commission.

Stillwater:  Plaintiff, Stillwater Capital Partners L.P.

Tannin:  Defendant, Matthew Tannin, who was a Senior Managing Director of BSAM and Chief Operating Officer of the High-Grade Enhanced Overseas Fund, and through BSAM a Portfolio Manager of the High-Grade Overseas Fund.

The Exchange Act:  Securities Exchange Act of 1934, codified as 15 U.S.C. §78(a).

Varga:  Plaintiff, Geoffrey Varga.

Walkers Defendants:  Walkers FS and the Walkers Independent Directors.

Walkers Firm:  The Walkers law firm.

Walkers FS:  Walkers Fund Services Limited, an entity that provided services to the Overseas Funds, Master Funds, and many other funds managed by the Bear Stearns Defendants.

Walkers Group:  The Walkers Group

Walkers Independent Directors:  Scott Lennon and Michele Wilson-Clarke.

Walkers SPV:  Walkers SPV Limited.

Whicker:  Simon Whicker, of KPMG Cayman, appointed as one of the liquidators of the Master Funds.

Wilson-Clarke:  Defendant, Michele Wilson-Clarke, who is a Senior Vice President of Walkers FS and served on the Board of Directors of both of the Overseas Funds.

2003 Fiscal Year:  Fiscal year for the year ended December 31, 2003.

2006 Fiscal Year:  Fiscal year for the year ended December 31, 2006.

Plaintiffs Geoffrey Varga and William Cleghorn, as Joint Voluntary Liquidators of Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. (the "High-Grade Overseas Fund") and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. (the "High-Grade Enhanced Overseas Fund"; and together with the High-Grade Overseas Fund, the "Overseas Funds"), and as assignees of Essex Fund Limited ("Essex") of its shares in the High-Grade Enhanced Overseas Fund; and Stillwater Capital Partners L.P. ("Stillwater") and Essex, individually and derivatively, on behalf of Bear Stearns High-Grade Structured Credit Strategies Fund, L.P. (the "High-Grade Domestic Fund") and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Fund, L.P. (the "High-Grade Enhanced Domestic Fund"; and together with the High-Grade Domestic Fund, the "Domestic Funds"), respectively, by their attorneys, Reed Smith LLP, as and for their Complaint against the above-named Defendants, respectfully allege as follows:

## NATURE OF THE ACTION

1.      This action seeks recovery of more than $1.5 billion of losses

sustained by investors in the Overseas Funds and Domestic Funds (collectively, the

"Funds") as a direct and proximate result of a sophisticated fraud perpetrated by

the Bear Stearns Companies, Inc. ("Bear Stearns Companies"), their co-defendant

affiliates and subsidiaries, Bear, Stearns & Co. Inc. ("Bear Stearns Co.") and Bear

Stearns Asset Management ("BSAM," and together with the Bear Stearns

Companies and Bear Stearns Co., "Bear Stearns"), and their officers, directors and

employees, Ralph Cioffi, Matthew Tannin, Raymond McGarrigal, George Buxton,

Barry Joseph Cohen, Gerald R. Cummins, David Sandelovosky, Greg Quental and

Michael Ernest Guarasci (collectively, with Bear Stearns, the "Bear Stearns

Defendants").

2.      The Bear Stearns Defendants' fraud resulted in the Funds'

highly publicized collapse in July 2007, which is widely believed to have been a

significant precipitating factor in the global credit crisis through which we all

continue to suffer.

3.      Defendants Cioffi and Tannin, high level Bear Stearns

executives who, with others, managed the Funds at issue, have recently been

indicted in the Eastern District of New York for mail fraud and conspiracy for their

- 3 -

roles in orchestrating and perpetuating the fraud with respect to the Funds, as detailed in this Amended Complaint.

4.     Co-defendants Deloitte & Touche LLP ("Deloitte US") and Deloitte & Touche ("Deloitte Cayman," and together with Deloitte US, the "Deloitte Defendants"), as well as Walkers Fund Services Limited ("Walkers FS"), Scott Lennon and Michele Wilson-Clarke (the "Walkers Independent Directors," and together with Walkers FS, the "Walkers Defendants") each materially participated in and facilitated the Bear Stearns Defendants' fraud.

5.     From their inception, the Funds were doomed to fail, because the Bear Stearns Defendants conceived, managed, and deceptively marketed them knowing that they would be viable so long as – but only so long as – the U.S. housing market continued to experience an unprecedented rise. The Bear Stearns Defendants also knew, however, that so long as they were viable, the Funds would generate massive, unprecedented fees and other benefits for each of the Bear Stearns Defendants.

6.     In short, in orchestrating this fraud, it appears that the Bear Stearns Defendants did not fail to plan, but rather, planned to fail.

7.     As <u>Business Week</u> reported in the months following the Funds' implosion, it is clear that these "hedge funds were built so they were virtually

guaranteed to implode if market conditions turned south." Matthew Goldstein & David Henry, *Bear Stearns' Bad Bet*, Bus. Wk. (Oct. 11, 2007).

8.    In structuring, marketing, and reporting the performance of the Funds, the Bear Stearns Defendants represented that the Funds would invest in broadly diversified pools of credit-related investment instruments, including, among other things, favorably risk-rated tranches of collateralized debt obligations ("CDOs"). They represented that at least 90% of all investments would have 'AAA' or at worst 'AA' default and valuation risk ratings conferred upon them by one or more of the three primary U.S. commercial credit rating agencies, Standard & Poors, Moody's and Fitch (the "Ratings Agencies").

9.    The Bear Stearns Defendants expressly represented that the Funds would have minimal exposure to sub-prime residential mortgages, and that the Bear Stearns Defendants would utilize their substantial, industry-leading risk management expertise and experience to ensure that the Funds were relatively safe, conservative investment vehicles. The Deloitte Defendants assured investors that they were conducting independent, thorough, and objective audits – including, among other things, testing the Bear Stearns Defendants' estimates of the fair value of the assets in the Funds. The Walkers Defendants promised investors that they would independently analyze, scrutinize and ultimately approve or disapprove any

- 5 -

insider transactions between and among the Funds and other Bear Stearns-related entities.

10.     Following the initial structuring of the High-Grade Domestic and Overseas Funds in 2003, the Bear Stearns Defendants began to systematically expose them to ever-increasing concentrations of aggressive and risky investments, including re-assembled CDO tranches and mortgage pools, as well as multiple "CDO-squareds" (CDOs comprised of slices of other CDOs). The High-Grade Enhanced Domestic and Overseas Funds were immediately exposed to high concentrations of these sorts of investments from their inception in 2006. These then-undisclosed investments caused each of the Funds to have disproportionate exposure to sub-prime residential mortgages – far beyond the exposure that was permitted under the Funds' governing documents, or that was disclosed to, or reasonably discoverable by, investors.

11.     Further, although the Bear Stearns Defendants at times represented in their monthly performance reports that only 6-8% of each Fund's portfolio was invested in sub-prime mortgage-backed securities, the Bear Stearns Defendants failed to inform investors that investments within the Funds that were collateralized by sub-prime mortgages reached in certain instances as high as approximately *60%* of the Funds' asset composition.

12.    The Bear Stearns Defendants also caused the Funds to use dramatically more borrowed capital (leverage) to multiply the size – and therefore, risk – of their investments than that which was disclosed to, or reasonably discoverable by, investors. This was done through greater than disclosed (or prudent, by any measure) use of short-term financings, known as 'repo' or repurchase transactions, and through the leveraged purchase of re-assembled investment pools and CDO-squareds that already included significant multiples of leverage.

13.    The Bear Stearns Defendants further perpetuated and expanded their fraud by, among other things, (i) knowingly (and without regard for existing market conditions) inflating the net asset value ("NAV") of the Funds, and (ii) using each of the Funds as dumping grounds for toxic investments held elsewhere on Bear Stearns' books – including through an enormous number of impermissible insider transactions.

14.    The Deloitte Defendants knowingly or recklessly facilitated the scheme through their continual issuance of unqualified, "clean" audit opinions, endorsing the Funds' financial statements.

15.    Additionally, the Walkers Defendants willfully disregarded their duties to provide independent review and approval of the vast majority of insider transactions executed by the Funds. On November 14, 2007, the Securities

Division of the Office of the Secretary of the Commonwealth of Massachusetts filed an administrative complaint, Docket No. E-2007-0064 (the "Massachusetts Complaint"), against BSAM alleging violations of the Massachusetts Uniform Securities Act, and recounting BSAM's failure to obtain approval from unaffiliated directors for numerous related-party transactions. The Massachusetts Complaint attaches documents establishing that hundreds of related-party "principal transactions" – including 78.95% of 342 principal transactions that took place in 2006 – were processed without prior approval by the Walkers Independent Directors.

16.    These pervasive, fraudulent courses of conduct exposed the Funds to untenable risks. Thus, when the inevitable U.S. housing market downtick began, while other funds structured in fashions similar to those in which the Bear Stearns Defendants promised to structure the funds here at issue suffered losses, but survived, the Funds' collapse was relatively quick and decisive.

17.    When the Funds began suffering growing losses during the decline in the U.S. housing and subprime markets in late 2006 and into the first quarter of 2007, the Bear Stearns Defendants continued to deceive investors by painting a rosy picture of the Funds' financial condition, even though the Bear Stearns Defendants knew that the Funds' situation was dire.

18.    For example, in an April 25, 2007, investor conference call, Defendants Cioffi and Tannin told investors that the funds had "significant amounts of liquidity," "margin calls had easily been met," there were only a "couple of million [dollars] of redemptions," and they were "very comfortable" with the Funds' "portfolio construction."

19.    Just weeks before, however, Cioffi had redeemed $2 million of his personal investment in one of the Funds. On April 22, 2007 – three days before the investor call – Tannin noted in an email to Cioffi that the subprime market looked "pretty damn ugly" and argued for closing and liquidating all four of the Funds. Yet, Tannin's opening remarks on the April 25, 2007 investor call, included a statement that "the key sort of big picture point for us at this point is our *confidence that the structured credit market and the sub-prime market in particular, has not systemically broken down* … So, from a structural point of view, from an asset point of view, from a surveillance point of view, *we're very comfortable with exactly, you know, where we are*."

20.    These representations, which were material to investors who were concerned about the Funds' performance and the impact of general market conditions at that time on the Funds, were patently false and misleading, and harmed investors in the Funds. In addition, after the April 25th call, approximately $23 million in new investor subscriptions were received for the May 1, 2007

subscription date.    These new investors equally were harmed by the Defendants'
actions.

21.    The Bear Stearns Defendants, the Walkers Defendants, and the
Deloitte Defendants each engaged in the improper behavior detailed herein to
generate substantial fees and other benefits for themselves.

22.    On June 19, 2008, Ralph Cioffi and Matthew Tannin were
indicted for mail fraud and conspiracy for their roles in orchestrating and
perpetuating the fraud detailed herein.  The Securities and Exchange Commission
("SEC") contemporaneously commenced a civil action against both.
Investigations by the U.S. Justice Department and the SEC are ongoing.

23.    Plaintiffs now bring this action for violations of the federal
securities law, fraud, breach of fiduciary duty, breach of contract, gross negligence,
negligence, accounting malpractice, aiding and abetting fraud and breaches of
fiduciary duty and unjust enrichment, in order to recover damages from the
Defendants, each of which was a fiduciary and/or contractual service provider to
the Funds, for injury and losses suffered by the Funds and their investors as a result
of the Defendants' acts and/or failures to act.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this action
pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) under §§ 10(b) and 20

of the Securities Exchange of 1934, codified as 15 U.S.C. §78(a) (the "Exchange Act"), and 28 U.S.C. § 1367 (supplemental jurisdiction) as jurisdiction is proper over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

25.    Jurisdiction is proper in New York, and venue is proper in this District pursuant to 28 U.S.C. §1391(a), in that each defendant resides in this District and/or a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### Plaintiffs

26.    Plaintiffs Geoffrey Varga ("Varga") and William Cleghorn ("Cleghorn") are the Joint Voluntary Liquidators (the "Liquidators") of each of (i) the High-Grade Overseas Fund and (ii) the High-Grade Enhanced Overseas Fund. Plaintiff Varga is a citizen of Canada and a resident of the Cayman Islands. Plaintiff Cleghorn is a citizen and resident of the United Kingdom.

27.    Plaintiffs Varga and Cleghorn were appointed as liquidators by the Grand Court of the Cayman Islands by Order dated March 20, 2008, a copy of which is attached hereto as Exhibit 1. Under Cayman law, Plaintiffs Varga and Cleghorn have all right and power to act for the Overseas Funds, including,

without limitation, the power to bring suit to recover for the benefit of those funds'
losses caused to them by third-parties.

28.    Plaintiffs Varga and Cleghorn are also assignees of shares of
Essex in the High-Grade Enhanced Overseas Fund.

29.    The Overseas Funds are both Cayman Islands exempted
companies, organized under the Companies Law of the Cayman Islands.  Prior to
the events here complained of, they had their principal place of business at the
offices of Defendant BSAM at 383 Madison Avenue, New York, New York
10179, and they operated as "feeder funds" for, respectively, Bear Stearns
High-Grade Structured Credit Strategies Master Fund Ltd., and Bear Stearns
High-Grade Structured Credit Strategies Enhanced Leverage Master Fund Ltd.
(collectively, the "Master Funds").

30.    Plaintiff Stillwater, an investor in, among others, the High-
Grade Domestic Fund, is a privately owned investment manager with its principal
place of business at 41 Madison Avenue, New York, New York 10010.
Throughout the periods referenced herein, Stillwater had full economic exposure to
limited partnership interests in the High-Grade Domestic Fund through a leverage
counterparty through which it initially invested in the High-Grade Domestic Fund.
Thereafter, direct ownership of such interests was transferred to Stillwater, in a
transaction approved by authorized representatives of the High-Grade Domestic

Fund, and thereby, Stillwater is a limited partner of the High-Grade Domestic Fund as of the date of filing of this Amended Complaint.

31.    Plaintiff Essex, an investor in, among others, the High-Grade Enhanced Domestic Fund, is a privately-held investment fund with its registered office at West Bay Road, Grand Cayman, Cayman Islands.  Throughout the periods referenced herein, Essex had full economic exposure to shares in the High-Grade Enhanced Domestic Fund through a leverage counterparty through which it initially invested in the High-Grade Enhanced Domestic Fund.  Thereafter, direct ownership of such shares was transferred to Essex, in a transaction approved by authorized representatives of the High-Grade Enhanced Domestic Fund, and thereby, Essex is a limited partner of the High-Grade Enhanced Domestic Fund as of the date of filing of this Amended Complaint.

32.    The Domestic Funds are each Delaware limited partnerships. Prior to the events here complained of, they also had their principal place of business at the offices of Defendant BSAM at 383 Madison Avenue, New York, New York 10179, and operated as "feeder funds" for the Master Funds.

33.    At all times, investors in the Funds had decision making and control powers conferred upon them by the Funds' governing documents – including, but not limited to, the right by majority vote, at any time, to remove and replace the parties in control of the Funds.  With the exception of a small number

- 13 -

of investors affiliated with Bear Stearns, the Funds' investors were unaware of –

and could not reasonably have discovered – the wrongful acts pled herein, and had

they been so aware, could and would have taken immediate steps to prevent such

wrongful acts and avoid the damages that flowed proximately therefrom to the

Funds.

## Defendants

34.    Defendant Bear Stearns Companies, at all relevant times, was

organized and existing under the laws of the State of Delaware, with its principal

place of business at 383 Madison Avenue, New York, New York 10179.  Bear

Stearns Companies, through its various subsidiaries, provides a broad range of

financial services to clients and customers worldwide. Bear Stearns Companies has

held itself out as a leading financial services firm serving governments,

corporations, institutions and individuals worldwide.  Its core business lines have

included institutional equities, fixed income, investment banking, global clearing

services, asset management, and private client services.

35.    On May 30, 2008, a wholly-owned subsidiary of JPMorgan

Chase & Co. merged with and into, Defendant Bear Stearns Companies, with Bear

Stearns Companies continuing as the surviving corporation and now as a

subsidiary of JPMorgan Chase & Co.

- 14 -

36.    Defendant BSAM, at all relevant times, was organized and existing under the laws of the State of New York, with its principal place of business at 383 Madison Avenue, New York, New York 10179.  BSAM held itself out as a market leader in the area of structured credit services, and an expert in managing structured credit assets.  BSAM also held itself out as an expert in risk management, describing risk management as the cornerstone of its business practice.  BSAM acted as investment manager to all or substantially all hedge funds developed by Bear Stearns, including, among others, the Funds, and was responsible not only for the operation of these feeder funds, but also for the operation and investment management of the Master Funds to which the Funds' monies were entrusted.  BSAM is registered with the SEC as an investment advisor under the Investment Advisors Act of 1940, as amended, and continues to exist as a wholly-owned subsidiary of defendant Bear Stearns Companies.

37.    Defendant Bear Stearns Co., at all relevant times, was a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 383 Madison Avenue, New York, New York 10179. Bear Stearns Co. continues to exist as a subsidiary of defendant Bear Stearns Companies and is registered with the SEC as a broker-dealer and an investment advisor under the Investment Advisors Act of 1940, as amended.  Among other things, Bear Stearns Co. acted as a placement agent to the High-Grade Domestic

- 15 -

Fund and the High-Grade Overseas Fund (collectively, the "High-Grade Funds"),

as well as the High-Grade Enhanced Domestic Fund and the High-Grade Enhanced

Overseas Fund (collectively, the "High-Grade Enhanced Funds"), for the purpose

of finding investors willing and able to invest in the Funds.

38.    Defendant Ralph Cioffi ("Cioffi") is a citizen and resident of

the State of New Jersey and, as relevant to this action, was a Senior Managing

Director of both BSAM and Bear Stearns Co., and a member of the Board of

Directors of Bear Stearns Co.  Through BSAM, Cioffi acted as Senior Portfolio

Manager of the High-Grade Overseas Fund, the High-Grade Enhanced Overseas

Fund, and the Master Funds, sharing with defendants Matthew Tannin and

Raymond McGarrigal responsibility for the management of the investment

portfolios for the High-Grade Overseas Fund, the High-Grade Enhanced Overseas

Fund, and the Master Funds.

39.    Defendant Matthew Tannin ("Tannin") is a citizen and resident

of the State of New York and, as relevant to this action, was a Senior Managing

Director of BSAM and Chief Operating Officer of the High-Grade Enhanced

Overseas Fund, and through BSAM a Portfolio Manager of the High-Grade

Overseas Fund, sharing with defendants Cioffi and Raymond McGarrigal

responsibility for the management of the investment portfolio for the High-Grade

Overseas Fund, the High-Grade Enhanced Overseas Fund, and the Master Funds.

40.    Defendant Raymond McGarrigal ("McGarrigal") is a citizen and resident of the State of New York and, as relevant to this action, was a Managing Director or Senior Managing Director of BSAM and a Portfolio Manager of both the High-Grade Overseas Fund and the High-Grade Enhanced Overseas Fund, sharing with defendants Cioffi and Tannin responsibility for the management of the investment portfolio for the High-Grade Overseas Fund, the High-Grade Enhanced Overseas Fund, and the Master Funds.

41.    Defendant George Buxton ("Buxton") is a citizen and resident of the State of New York and, as relevant to this action, was a Senior Managing Director of Bear Stearns Co.

42.    Until the events giving rise to this action, Cioffi, Tannin, McGarrigal and Buxton (collectively, the "Management Defendants") were responsible for, among other things, the composition and risk management of the High-Grade Funds and the High-Grade Enhanced Funds, as well as the Master Funds.

43.    Defendant Barry Joseph Cohen ("Cohen") is a citizen and resident of the State of New York and, as relevant to this action, was a director of both of the High-Grade Overseas Fund and its respective Master Fund at all relevant times.  Cohen was also a Senior Managing Director and Director of

- 17 -

Alternative Investments (Hedge Funds) for BSAM and was a member of the board of directors of Bear Stearns Co.

44.    Defendant Gerald R. Cummins ("Cummins") is a citizen and resident of the State of New York and, as relevant to this action, was a director of the High-Grade Overseas Fund and its Master Fund beginning in August 2006 and was also a director of the High-Grade Enhanced Overseas Fund and its Master Fund at all relevant times.  Cummins was also a Managing Director of BSAM responsible for hedge fund-middle office support and firm-wide operations risk.

45.    Defendant David Sandelovosky ("Sandelovsky") is a citizen and resident of the State of New Jersey and, as relevant to this action, was a director of the High-Grade Overseas Fund and its Master Fund from October 2005 until on or about March 28, 2007, and was also a director of the High-Grade Enhanced Overseas Fund and its Master Fund from its inception until on or about March 28, 2007.  Sandelovsky was also a Senior Managing Director of Alternative Investments (Hedge Funds) for BSAM.

46.    Defendant Greg Quental ("Quental") is a citizen and resident of the State of Connecticut and, as relevant to this action, was a director of both the High-Grade Overseas Fund and its respective Master Fund beginning on or about March 28, 2007.  Quental is also a Senior Managing Director, Director of Hedge Funds and Chairman of Bear Measurisk, LLC ("Bear Measurisk"), a wholly-

owned subsidiary of BSAM and provider of risk measurement tools and analytics to the investment community. Quental joined BSAM in 2003, and from February 2004 through April 2005 served as President and Chief Executive Officer of Bear Measurisk. In April 2005, Mr. Quental was appointed Chairman of Bear Measurisk's Board of Directors and made responsible for BSAM's HedgeSelect business and Due Diligence Group.

47.    Defendant Michael Ernest Guarasci ("Guarasci") is a citizen and resident of the State of New Jersey and, as relevant to this action, was a director of the High-Grade Overseas Fund and its Master Fund from September 2003 until October 2005. Guarsci was also a Senior Managing Director and Chief Financial Officer of BSAM and was responsible for financial reporting, operations, information technology and risk management.

48.    Defendants Cohen, Cummins, Sandelovsky, Quental and Guarasci are collectively referred to as the "BSAM Directors."

49.    Defendant Deloitte US is a Delaware limited liability partnership engaged in business as, among other things, an accounting and auditing firm with offices located in (among other places) New York, New York.

50.    Defendant Deloitte Cayman is a member firm of Deloitte Touche Tohmatsu, a Swiss Verein with global headquarters located in New York, New York, and is engaged in business as, among other things, an accounting and

- 19 -

auditing firm with offices located in (among other places) Grand Cayman, Cayman

Islands. The Deloitte Defendants were engaged as the independent outside auditor

of the Funds, as well as their respective Master Funds and numerous other Bear

Stearns-related entities, for each fiscal year between at least 2003 and 2006, and

issued various certified audit reports to, and in respect of, these entities in

connection with each of its engagements.

51.     Defendant Walkers Financial Services Limited ("Walkers FS")

is a Cayman entity with its principal place of business located at Walker House, 87

Mary Street, George Town, Grand Cayman, Cayman Islands. As discussed below,

Walkers FS provided services to the Overseas Funds, Master Funds, and many

other funds managed by the Bear Stearns Defendants.

52.     Defendant Scott Lennon ("Lennon") is a citizen of Canada, and

a resident of the Cayman Islands. Lennon was – and still is – a Senior Vice

President of Walkers FS and, as discussed below, served on the Board of Directors

of both of the Overseas Funds.

53.     Defendant Michele Wilson-Clarke ("Wilson-Clarke") is a

citizen of the United States, and a resident of the Cayman Islands. Wilson-Clarke

also was – and still is – a Senior Vice President of Walkers FS and, as discussed

below, served on the Board of Directors of both of the Overseas Funds.

**Other Relevant Entities**

54.    The High-Grade Master Fund is a Cayman Islands exempted

company organized under the Companies Law of the Cayman Islands.  BSAM was

the investment manager for the High-Grade Master Fund.  The Management

Defendants all shared responsibility for the management of the High-Grade Master

Fund investment portfolio, and all of the High-Grade Fund Directors were also

directors of the High-Grade Master Fund.

55.    The High-Grade Enhanced Master Fund, is a Cayman Islands

exempted company organized under the Companies Law of the Cayman Islands.

BSAM was the investment manager for the High-Grade Enhanced Master Fund.

The Management Defendants all shared responsibility for the management of the

High-Grade Enhanced Master Fund investment portfolio, and the High-Grade

Enhanced Fund Directors were also directors of the High-Grade Enhanced Master

Fund.

56.    The Master Funds, at Bear Stearns' insistence, were placed into

official court-directed liquidation in the Cayman Islands in August 2007, with

KPMG Cayman Islands as Bear Stearns' designated liquidators.  That foreign

liquidation was not recognized under Chapter 15 of the U.S. Bankruptcy Code in

the United States Bankruptcy Court for the Southern District of New York

because, by reason of domination of these Master Funds by Bear Stearns and its

- 21 -

agents, the center of main interest of the Master Funds has been held to be New York rather than the Cayman Islands. See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122 (Bankr. S.D.N.Y. 2007), aff'd, Civ. Case. No. 07-8370, 2008 WL 2198272, at *1 (S.D.N.Y. May 27, 2008).

57.     The Walkers Group ("Walkers Group") is an international organization with offices located in the Cayman Islands, London, Hong Kong, the British Virgin Islands, Jersey and Dubai. The principal place of business of the Walkers Group is located at Walkers House, 87 Mary Street, George Town, Grand Cayman, Cayman Islands.

58.     Walkers SPV Limited ("Walkers SPV") is a Cayman entity with its principal place of business located at Walker House, 87 Mary Street, George Town, Grand Cayman, Cayman Islands. As discussed below, Walkers SPV served as Star Trustee in relation to the Overseas Funds.

## FACTS

### The High-Grade Funds Fraud

#### Structure and Initial Marketing of the High-Grade Funds

59.     In March 2003, the Bear Stearns Defendants, eager for investment management fees in an increasingly saturated investment market, created and began selling to investors the High-Grade Funds. By so doing, the

Bear Stearns Defendants sought to capitalize on the then-booming United States

housing market in ways beyond those available through the existing, sizeable, and

increasingly efficient CDO and related structured products markets.

60.    As of 2003, housing prices were increasing at a generally brisk

pace throughout the United States.  This, along with the Bear Stearns Defendants'

then-stellar reputation for mortgage-backed securities analysis, allowed them to

solicit institutional and high net worth investors to commit capital to the "High-

Grade" Funds.

61.    The High-Grade Funds were designed to raise money to invest

in the High-Grade Master Fund, also created by the Bear Stearns Defendants.  The

High-Grade Master Fund, in turn, would invest the capital it received from these

two "feeder funds" as directed by defendant BSAM, which was the Investment

Manager of the High-Grade Master Fund, as well as the Investment Manager of the

High-Grade Funds, the sole general partner of the High-Grade Domestic Fund, and

whose officers comprised the majority of the board of directors of the High-Grade

Overseas Fund and the High-Grade Master Fund.

62.    Throughout, BSAM's role with regard to the High-Grade Funds

was principally controlled by defendant Cioffi, who also was an officer and

director of Bear Stearns Co.  Working in concert with Cioffi throughout was

defendant Tannin, who was a Senior Managing Director of BSAM; and they were later joined by defendants McGarrigal and Buxton.

63.    The Bear Stearns Defendants had unique knowledge, not available to investors or others, of the fact that even a slight downturn in the U.S. housing market – whether resulting from either a small percentage drop in home prices or sales volumes – would cause the High-Grade Funds to sustain such disproportionate, multiplicative losses, that all investor capital would vanish, and the High-Grade Funds' creditors and counterparties would be put at great risk.

64.    The Bear Stearns Defendants could not, and therefore did not, disclose any of this information to investors and have any hope of achieving their goals of securing investors for the High-Grade Funds.  Instead, they inveigled investors into committing their capital to the High-Grade Funds through the use of the Bear Stearns reputation and branding.  They started by affixing their brand name to the funds, starting each fund's name with "Bear Stearns."  Immediately after the name, they affixed the grossly misleading label "High-Grade."  They then went on to create the Confidential Offering Memoranda ("Offering Memoranda" or "COMs") for the High-Grade Funds.

65.    Although marketed as relatively safe, conservative investment funds seeking to obtain a moderate rate of return for investors – "high current income and capital appreciation relative to LIBOR" (High-Grade Overseas COM,

p. 1) – the High-Grade Funds were run with little or no regard to generating investor returns, or to protecting investor capital. Rather, they were structured in knowing contravention of their stated purposes, and were at all times operated by the Bear Stearns Defendants and the other Defendants in furtherance of their own interests – and not the interests of the funds or their investors – notwithstanding the fiduciary and other duties the Bear Stearns Defendants, Deloitte Defendants and Walkers Defendants owed to the High-Grade Funds and their investors.

66.    The Bear Stearns Defendants represented that the High-Grade Funds would be comprised of broadly diversified credit investments, including favorably risk-rated slices of CDOs. But while the tranches of CDOs in which the High-Grade Funds invested appear to have been individually deemed by the Ratings Agencies to be among the safest available – attaining AAA or AA ratings or their equivalents – as the Bear Stearns Defendants and their retained professionals knew and, due to the opacity of the High-Grade Funds, solely were able to know, the ways in which the Bear Stearns Defendants assembled and leveraged these otherwise relatively safe components into portfolios destined the High-Grade Funds for failure.

67.    Moreover, due to the knowing misrepresentations of the Bear Stearns Defendants, and the willful neglect and abandonment by the Deloitte Defendants and Walkers Defendants of their obligations, the Bear Stearns

- 25 -

Defendants had free reign – in manners wholly inconsistent with the representations made to investors – to manipulate the High-Grade Funds' investments, and reported returns, as they saw fit, throughout the lives of the funds.

68.    In the High-Grade Domestic COM, the Bear Stearns Defendants outlined the High-Grade Funds' investment strategy, with elaborate emphasis on the "high grade" of the collateral, as well as the sophistication of BSAM's management and risk control techniques.  Specifically, in the High-Grade Domestic COM and in sales pitches concerning the High-Grade Funds, the Bear Stearns Defendants knowingly made false and intentionally misleading representations concerning the credit quality of securities in which the High-Grade Funds would invest, the Bear Stearns Defendants' ability to manage risk, the methods that would be used to evaluate the High-Grade Funds' performance, and controls that were in place to resolve conflicts arising from related party transactions.

69.    For example, with regard to the quality of securities in which the High-Grade Funds would invest, the Bear Stearns Defendants made the following false and misleading representations:

> The Investment Manager [BSAM] will use its structuring and research experience to identify structured finance securities with fundamentally strong credit risk profiles that are priced attractively.  A significant portion of the investment return of the Master Fund is expected to be current income resulting from a positive yield spread between the investment income of

the investments (together with any corresponding hedging instruments) of the Master Fund and the associated borrowing costs. Additionally, to the extent that the Master Fund's assets increase in value, the Master Fund may realize capital appreciation. (High-Grade Domestic COM at p. 11; High-Grade Overseas COM at p. 11).

*        *        *        *

The Master Fund intends to concentrate its investments in the investment-grade classes of structured finance securities. For all investments (excluding Repackaging Vehicle Junior Interests) the Master Fund has targeted a portfolio rating composition of approximately 90% structured finance securities rated from AAA to AA- by Standard & Poor's, from Aaa to Aa3 by Moody's or from AAA to AA- by Fitch. The 10% balance of the portfolio (excluding Repackaging Vehicle Junior Interests) may be rated below such ratings or be unrated. The above percentages are target concentrations only. The Master Fund will not be required to sell any security that is downgraded subsequent to its purchase by the Master Fund. It is anticipated that no more than 30% of the Master Fund's Net Asset Value will be invested in Repackaging Vehicle Junior Interests at the time any Repackaging Vehicle Junior Interest investment is made. The Repackaging Vehicle Junior Interests will generally not be rated. (High-Grade Domestic COM at p. 14; High-Grade Overseas COM at p. 14).

*        *        *        *

Targeted Portfolio Characteristics, Credit Quality: At least 90% 'AAA' and 'AA-.' (Sales pitch concerning High-Grade Funds).

*        *        *        *

[the High-Grade Funds' p]rimary focus is to buy and hold 'AAA' and 'AA' structured finance securities. (Sales pitch concerning High-Grade Funds).

*        *        *        *

> Credit Quality: At least 90% 'AAA' and 'AA-' structured finance securities with up to 10% in higher yielding lower rated securities. (Sales pitch concerning High-Grade Funds).

70. Notwithstanding BSAM's multiple, facially conflicting roles with regard to the High-Grade Funds, the Bear Stearns Defendants nonetheless touted the independent governance of the High-Grade Funds, including the presence of independent directors of the High-Grade Overseas Fund and High-Grade Master Fund, who would be charged with making all decisions relevant to insider transactions engaged in by the funds and any affiliated entity.

71. In the High-Grade COMs, the Bear Stearns Defendants made the following false and misleading representations with regard to conflict management:

> As [investment] situations may involve conflicts between the interest of the Investment Manager or its related persons, on the one hand, and the interests of the Investment Manager's clients, on the other, the Investment Manager has established internal policies to ensure that the Investment Manager and its personnel do not prefer their own interests to those of the Investment Manager's clients and that clients are treated fairly. (High-Grade Domestic COM at p. 26; High-Grade Overseas COM at p. 26).

*        *        *        *

> Members of the boards of directors of the Fund and the Master Fund who are not affiliated with the Investment Manager or their delegates or other authorized representatives of the Fund or the Master Fund will have the responsibility for approving any transactions between the Fund or the Master Fund and the Investment Manager or its affiliates involving significant conflicts of interest (including principal trades).

- 28 -